BAKER MARQUART LLP
BRIAN E. KLEIN (258486) (bklein@bakermarquart.com)
SCOTT M. MALZAHN (229204) (smalzahn@bakermarquart.com)
CARTER L. GEORGE (308775) (cgeorge@bakermarquart.com)
2029 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone: (424) 652-7814
Facsimile: (424) 652-7850

COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
JEFFREY M. KABAN (235743) (jkaban@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

COOLEY LLP
DANIEL L. SACHS (294478) (dsachs@cooley.com)
1299 Pennsylvania Ave. NW Suite 700
Washington, DC 20004
Telephone: (202) 728-7114
Facsimile: (202) 842-7899

Attorneys for Defendant
DYNAMIC LEDGER SOLUTIONS, INC., a Delaware Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BAKER, individually and on behalf of all others similarly situated, | Case No: 3:17-cv-06850 |
| Plaintiff, | **DEFENDANT DYNAMIC LEDGER SOLUTION, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| v. | Date:   February 8, 2018 |
| DYNAMIC LEDGER SOLUTIONS, INC., a Delaware corporation, THE TEZOS FOUNDATION, a Swiss foundation, KATHLEEN BREITMAN, an individual, ARTHUR BREITMAN, an individual, JOHANN GEVERS, an individual, STRANGE BREW STRATEGIES, LLC, a California limited liability company, and DOES 1 through 100, inclusive, | Time:   1:30pm<br>Court:   3<br>Judge:   Hon. Richard Seeborg |
| Defendants. | |

1

## TABLE OF CONTENTS

2
Page

3   I.      INTRODUCTION………………………………………………………......….1

4   II.     FACTUAL AND PROCEDURAL BACKGROUND…………………………......3

5   III.    THE RELEVANT STATUTORY  FRAMEWORK…………………………......5

6           A.      The PLSRA Strengthened Protections Against Abuses in Federal
                    Courts But Inadvertently Created a Jurisdictional Loophole…………………..….5
7
8           B.      The Uniform Standards Act Closes the Jurisdictional Loophole
                    Created by the PSLRA………………………………………………………6

9   IV.     ISSUE TO BE DECIDED (Civil Local Rule 7-4(a)(3))…………………………...8

10  V.      ARGUMENT…………………………………………………………………......8

11          A.      This Court Should Stay This Motion Until The Supreme Court
                    Decides Cyan……………………………………………………………..….8
12
13          B.      Plaintiff Bears the Burden of Establishing an Express Exception to
                    Removal Where, As Here, the Court Has Original Jurisdiction……………....…..12

14          C.      Plaintiff Has Not Met His Burden of Proving an Express Exception
                    to the Removability of This Action……………………………………………..…15
15
16                 1.      Uniform Standards Act Stripped State Courts of Jurisdiction
                           Over Class Actions Asserting Securities Act Claims……………….…..15

17                 2.      Because State Courts No Longer Have Jurisdiction Over
                           Securities Act Class Actions, the Anti-Removal Provision
18                         Does Not Bar Removal of These Cases Under 28 U.S.C. § 1441…..…..…18

19                 3.      Plaintiffs' Position Cannot Be Reconciled With the Language
                           of the Uniform Standards Act or Supreme Court Precedent…………..…..19
20
21          D.      Permitting this Case to Proceed in State Court Would Gut Key Provisions
                    of the PSLRA While Risking Inconsistent Rulings and Judgments……………….21

22  VI.     CONCLUSION……………………………………………………………..…..22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Am. Life Ins. Co. v. Stewart*,
    300 U.S. 203 (1937) ....................................................................................................9

5

6

*Breuer v. Jim's Concrete of Brevard, Inc.*,
    538 U.S. 691 (2003) ..................................................................................................13

7

8

*Cad/Cam Publ'g, Inc. v. Archer*,
    2001 WL 274555 (S.D. Cal. Feb. 28, 2001) ....................................................20, 21

9

*Cervantes v. Dickerson*,
    2015 WL 6163573 (N.D. Cal. Oct. 21, 2015) ..........................................................20

10

11

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) .................................................................................20

12

*City of Birmingham Retirement & Relief System v. ZTO Express (Cayman), Inc.*,
    2017 WL 3750660 (N.D. Ala. Aug. 28, 2017) .........................................................9

13

14

*Clinton v. Jones*,
    520 U.S. 681 (1997) ..................................................................................................9

15

16

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ...........................................................................9, 11, 12

17

*Cyan, Inc., et al., v. Beaver Cty. Emps. Ret. Fund, et al.*,
    137 S.Ct. 2325 (2017) ...........................................................................................1, 11

18

19

*In re Fannie Mae 2008 Sec. Litig.*,
    2009 U.S. Dist. LEXIS 109888 (S.D.N.Y. Nov. 24, 2009) ......................................10

20

21

*In re Fannie Mae 2008 Sec. Litig.*,
    2009 WL 4067266 (S.D.N.Y. Nov. 24, 2009) ........................................................16

22

*In re King Pharms., Inc.*,
    230 F.R.D. 503 (E.D. Tenn. 2004) ..........................................................................10

23

24

*Gaus v. Miles, Inc.*,
    980 F.2d 566 (9th Cir. 1992) ..............................................................................13, 14

25

26

*Gaviria v. Dynamic Ledger Solutions, Inc.*,
    No. 6:17-cv-01959 (M.D. Florida Nov. 13, 2017) ...................................................4

27

*GGCC, LLC v. Dynamic Ledger Solutions, Inc.*,
    No. 3:17-cv-06779 (N.D. Cal. Nov. 26, 2017) .........................................................4

28

ii

OPPOSITION TO REMAND 5:17-cv-06779-RS

*Guo v. ZTO Express (Cayman) Inc.*,
  2017 WL 6547746 (N.D. Cal. Dec. 22. 2017) ................................................................10

*Hao Wu v. Tokai Pharmaceuticals*,
  Case No. 1:16-cv-122550-MLW, Dkt. 62 (D. Mass. Sept. 8, 2017) ...........................10

*Harper v. Va. Dep't of Taxation*,
  509 U.S. 86 (1993) .........................................................................................................11

*Hung v. iDreamSky Tech. Ltd.*,
  2016 U.S. Dist. LEXIS 8389 (S.D.N.Y. Jan. 25, 2016) ................................................10

*Iron Workers Mid-S. Pension Fund v. Terraform Glob., Inc.*,
  2016 WL 827374 (N.D. Cal. Mar. 3, 2016) ............................................................14, 20

*King v. Burwell*,
  135 S.Ct. 2480 (2015) ...........................................................................................3, 21, 22

*Kircher v. Putnam Funds Trust*,
  547 U.S. 633 (2006) .....................................................................................................5, 8

*Knox v. Agria Corp.*,
  613 F.Supp.2d 419 (S.D.N.Y. 2009) .......................................................10, 15, 17, 23

*Kulinski v. Am. Elec. Power Co.*,
  No. 02-03-412 (S.D. Ohio Jan. 7, 2004) ......................................................................10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .........................................................................................................9

*Lapin v. Facebook, Inc.*,
  2012 WL 3647409 (N.D. Cal. Aug. 23, 2012) ...........................................................3, 15

*Lapin v. Facebook, Inc.*,
  2012 U.S. Dist. LEXIS 119924 (N.D. Cal. Aug. 23, 2012) ........................................10

*Libhart v. Santa Monica Dairy Co.*,
  592 F.2d 1062 (9th Cir. 1979) .......................................................................................13

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
  761 F.3d 1027 (9th Cir. 2014) .......................................................................................14

*Luther v. Countrywide Home Loans Servicing LP*,
  533 F.3d 1031 (9th Cir. 2008) .......................................................................................13

*MacDonald v. Dynamic Ledger Solutions, Inc.*,
  No. 3:17-cv-7095 (N.D. Cal. Dec. 13, 2017) ..................................................................4

*Madden v. Cowen & Co.*,
  576 F.3d 957 (9th Cir. 2009) .........................................................................................14

OPPOSITION TO REMAND 5:17-cv-06779-RS

*McKnight v. Blanchard*,
   667 F.2d 477 (5th Cir. 1982) .................................................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ....................................................................................5, 6, 8

*United States v. Morton*,
   467 U.S. 822 (1984) ..........................................................................................18

*Okusko v. Dynamic Ledger Solutions, Inc., et al.*,
   No. 3:17-cv-06829 (N.D. Cal. Nov. 28, 2017) ...................................................4

*Pinto v. Vonage Holdings Corp.*,
   2007 WL 1381746 (D.N.J. May 7, 2007) .....................................................10, 16

*Rajasekaran v. CytRx Corp.*,
   2014 WL 4330787 (C.D. Cal. Aug. 21, 2014)................................................19, 20

*Ret. Sys. v. Worldcom, Inc.*,
   368 F.3d 86 (2d Cir. 2004)................................................................................16

*Rezko v. XBiotech Inc.*,
   2017 WL 4544683 (W.D. Tex. Oct. 6, 2017) .....................................................10

*Rovner v. Vonage Holdings Corp.*,
   2007 WL 446658 (D.N.J. Feb. 5, 2007) .......................................................10, 16

*Rubin v. Pixelplus Co.*,
   2007 WL 778485 (E.D.N.Y. Mar. 13, 2007)................................................10, 16

*Serrano v. 180 Connect, Inc.*,
   478 F.3d 1018 (9th Cir. 2007) ...........................................................................13

*SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of CA*,
   189 F.3d 909 (9th Cir. 1999) .............................................................................12

*St. Lucie Cty. Fire Dist. Firefighters' Pension Tr. Fund v. Sw. Energy Co.*,
   2017 WL 3994938 (S.D. Tex. Sept. 5, 2017) ......................................................9

*Stichting Pensioenfonds ABP, v. Countrywide Fin. Corp.*,
   447 B.R. 302 (C.D. Cal. 2010) ..........................................................................12

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003).............................................................................18

*Syngenta Crop Prot., Inc. v. Henson*,
   537 U.S. 28 (2002)...........................................................................................14

*In re Washington Pub. Power Supply Sys. Sec. Litig*,
   823 F.2d 1349 (9th Cir. 1987) ...........................................................................22

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Williams v. Costco Wholesale Corp.*,
  471 F.3d 975 (9th Cir. 2006) ...........................................................................20

*Wunsch v. Am. Realty Capital Properties*,
  2015 WL 2183035 (D. Md. Apr. 14, 2015) ......................................................16

*Wunsch v. Am. Realty Capital Props.*,
  2015 U.S. Dist. LEXIS 48759 (D. Md. Apr. 14, 2015) .....................................10

*Young v. Pac. Biosciences of Cal., Inc.*,
  2012 WL 851509 (N.D. Cal. Mar. 13, 2012) ......................................................3

**Federal Statutes**

15 U.S.C. § 77, *et seq.*................................................................................... *passim*

15 U.S.C. § 78j(b) ...............................................................................................23

28 U.S.C. § 1331 ............................................................................................4, 13

28 U.S.C. §1337 ....................................................................................................4

28 U.S.C. § 1441 ......................................................................................... *passim*

28 U.S.C. §1446 ....................................................................................................4

42 U.S.C. § 18031 ...............................................................................................21

**Other Authorities**

H.R. Conf. Rep. No. 105-803 (1998)....................................................... *passim*

H.R. Rep. No. 105-640 (1998)........................................................................6, 22

S. Rep. No. 105- 182 (1998)..................................................................................6

PSLRA Conf. Rep. No. 104-369 ........................................................................12

PSLRA. H.R. Rep. No. 105-803 ...........................................................................6

Presidential Statement on Signing the Securities Litigation Uniform Standards Act
  of 1998, 1998 U.S.C.C.A.N. 767 (Nove. 3, 1998)..............................................7

U. PA. J. Bus. L. 739 (2015)................................................................................3

U. PENN. J. BUS. L. 739, 754, 759-78 (2015) .................................................10

## I.      INTRODUCTION

Plaintiff Andrew Baker's ("Plaintiff") Complaint asserts violations of the federal securities laws based on a novel application of federal court precedent.  This Complaint is nearly identical to three related class actions pending before this Court, but Plaintiff's Motion to Remand ("Motion") asks this Court to remand his federal claims to state court.  Identical class actions should not proceed on two tracks, state and federal, subject to different legal standards and competing judicial interpretations.  Yet, Plaintiff seeks just this relief in an attempt to avoid the procedural protections of the federal securities laws that apply in federal court.

As a threshold matter, this Court should stay its decision on Plaintiff's Motion until after the U.S. Supreme Court issues its opinion in *Cyan, Inc. v. Beaver County Employees Retirement Fund, et al.*, No. 15-1439.  On November 28, 2017, the Supreme Court heard oral argument in *Cyan* in order to decide whether the Securities Litigation Uniform Standards Act of 1988 ("Uniform Standards Act") divests state courts of subject matter jurisdiction over class actions alleging violations of the Securities Act of 1933 (the "Securities Act").  A decision in *Cyan* is expected within months, and will directly control the issue before this Court.  *Cyan* may preclude the relief Plaintiff seeks, which may be why Plaintiff's Motion conveniently omitted any reference to it.  This Court should stay this motion pending *Cyan* in order to avoid wasting the resources of the Court and the parties while a directly controlling point of law is decided.

Alternatively, the Court should deny the motion to remand outright.  This Court undeniably has subject-matter jurisdiction over this action because Plaintiff asserts *federal* claims arising out of Sections 5 and 17 of the Securities Act.  Under the general removal statute codified in 28 U.S.C. § 1441(a), removal was *prima facie* proper.  Plaintiff bears the burden of showing that an exception to removal exists to support remand.  He does not and cannot meet that burden.

Plaintiff relies on the Anti-Removal Provision in Section 22(a) of the Securities Act to argue that this case falls within an exception to removal.  The Uniform Standards Act carves out an exception that prevents removal of certain cases "brought in any State court of competent jurisdiction[.]"  15 U.S.C. § 77v(a) ("except as provided in section [16(c)] of this title, no case

1

arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States").  Additionally, although district courts have ruled inconsistently on this issue, Defendant Dynamic Ledger Solutions, Inc. ("DLS" or "Defendant") respectfully submits that the Uniform Standards Act stripped state courts of subject-matter jurisdiction over all "covered class actions."  This is true regardless of whether such actions arise under federal law, state law or both.  Because this action meets the statutory definition of a "covered class action," the California Superior Court lacks subject-matter jurisdiction and the anti-removal provision is inapplicable.

Further, DLS's statutory interpretation is consistent with legislative intent.  Congress enacted the Uniform Standards Act to close a jurisdictional loophole opened by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which led plaintiffs to pursue securities class actions increasingly in state courts (California state court in particular).  Before the PSLRA there was "essentially no significant securities class action litigation brought in state court," H.R. Rep. No. 105-803, at 14 (1998). After its passage, however, plaintiffs increasingly filed securities class actions in state court in order to avoid the heightened burdens imposed by the PSLRA.  .  In response to plaintiffs' circumventions, Congress passed the Uniform Standards Act, which made "[f]ederal court[s] the exclusive venue for most securities class action lawsuits [and] . . . prevent[ed] plaintiffs from seeking to evade the protections that [f]ederal law provides against abusive litigation by filing suit in State, rather than in Federal, court." *Id*. at 13.  In contradiction of the Uniform Standards Act's jurisdictional restriction, however, Plaintiff filed his mixed federal and state securities claims in San Francisco County Superior Court.  After DLS removed this matter, Plaintiff sought remand back to state court.  Indeed, Plaintiff seeks to evade the procedural requirements imposed by the PSLRA" even though three nearly identical federal securities class actions are pending in this Court.[1]

As this Court has itself recognized, there is no definitive appellate ruling on whether cases brought exclusively under the Securities Act are removable under the Uniform Standards Act.  *See*

---

[1] *See GGCC, LLC, Okusko and MacDonald, infra,*

OPPOSITION TO REMAND 5:17-cv-06779-RS

*Young v. Pac. Biosciences of Cal., Inc.*, No. 5:11-cv-05668 EJD, 2012 WL 851509, at *3 (N.D. Cal. Mar. 13, 2012).  Some district courts have even put aside the plain purpose and language of the statute and granted motions to remand.  In those instances, however, courts chose to focus on limited technical readings of certain of the Uniform Standards Act's amendments to anti-removal provisions rather than the threshold question of whether the Uniform Standards Act divested state courts of jurisdiction over such cases in the jurisdictional provision of the same section.  (*See infra*, n. 15.)  In contrast, the district courts that have recognized this jurisdictional divestment, including Judge Chesney in *Lapin v. Facebook, Inc.*, No. C-12-3195 MMC, 2012 WL 3647409 (N.D. Cal. Aug. 23, 2012), have denied remand.  (*See infra*, n. 16.)[2]

As the Supreme Court recently reaffirmed, courts must interpret a statute consistent with its purpose, if possible.  *King v. Burwell*, 135 S.Ct. 2480, 2496 (2015).  The Uniform Standards Act's purpose was to prevent state court securities class actions and promote a uniform national standard. The only interpretation of the Uniform Standards Act that is consistent with this purpose is that the Uniform Standards Act stripped state courts of jurisdiction over Securities Act covered class actions.  To permit this action to proceed in San Francisco Superior Court undermines the procedural protections of the PSLRA while concurrently creating unnecessary multi-forum litigation that likely will lead to inconsistent rulings concerning identical subject matter and waste the resources of the parties and the Court.

Accordingly, DLS respectfully requests that Plaintiff's motion to remand be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Five securities class actions have been filed against DLS and various other defendants asserting claims under the Securities Act in connection with the Tezos Foundation's fundraiser that sought contribution to promote and develop the Tezos protocol and blockchain.  *See Baker v. Dynamic Ledger Solutions, Inc.*, Case No. 3:17-cv-06860, Superior Court of California, County of

---

[2] For a thorough analysis of why courts granting remand have improperly focused on Section 16(c) instead of 22(a), see Mitchell A. Lowenthal & Shiwon Choe, *State Courts Lack Jurisdiction to Hear Securities Act Class Actions, But the Frequent Failure to Ask the Right Question Too Often Produces the Wrong Answer*, 17 U. PA. J. Bus. L. 739 (2015) ("Lowenthal & Choe").

San Francisco (filed October 25, 2017) ("*Baker*"); *Gaviria v. Dynamic Ledger Solutions, Inc.,* Case No. 6:17-cv-01959, United States District Court, Middle District of Florida (filed November 13, 2017) ("*Gaviria*"); *GGCC, LLC v. Dynamic Ledger Solutions, Inc.*, Case No. 3:17-cv-06779, United States District Court, Northern District of California (filed November 26, 2017) ("*GGCC*"); *Okusko v. Dynamic Ledger Solutions, Inc., et al.*, Case No. 3:17-cv-06829, United States District Court, Northern District of California (filed November 28, 2017) ("*Okusko*"); and *MacDonald v. Dynamic Ledger Solutions, Inc.*, Case No. 3:17-cv-7095, United States District Court, Northern District of California (filed December 13, 2017) ("*MacDonald*").  These five actions all purport to be brought on behalf of substantially the same class of persons who donated Bitcoin or Ether to the fundraiser.

Plaintiff is the only putative class representative who filed suit in state court.  On October 25, 2017, Plaintiff brought this action in San Francisco Superior Court.  He alleges that he contributed "one Bitcoin" to the fundraiser.  (¶ 73.)[3]  Plaintiff asserts six causes of action, comprised of three federal claims arising under Sections 5 and 17 of the Securities Act, two state law claims for false advertising and unfair competition, and an alter ego liability claim.  (¶¶ 84-116.)  Plaintiff purports to sue on behalf of "[a]ll natural persons who purchased Tezzies during the ICO conducted by Defendants in July 2017."  (¶ 19.)  The complaint suggests that there are "approximately thirty thousand" members of the proposed class.  (¶ 20.)

On November 29, 2017, Defendant Dynamic Ledger Solutions, Inc. ("DLS") timely filed a notice of removal of this action to this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1441, 1446, as well as 15 U.S.C. § 77(v)(a).  (ECF No. 1.)  A couple days later, on December 4, this Court entered a Related Case Order, relating the instant action with the *GGCC* and *Okusko* matters.  (*See* Case No. 3:17-cv-6850, ECF No. 6.)  On December 19, 2017, this Court granted an administrative order filed by the plaintiff in *MacDonald* asking whether its case was also related, and ordered it related with the previous three cases.  (*See* Case No. 3:17-cv-6779, ECF No. 14-15.)  To date, the *Gaviria*

---

[3] All citations to "¶ __" are to Plaintiff's Complaint in the instant action, which is attached to the Notice of Removal.  (ECF No. 1.)

action has not yet been transferred to this Court or otherwise consolidated with the other actions, but that is expected to occur.

On December 28, 2017, Plaintiff moved to remand this Action to the Superior Court for San Francisco County.  (ECF No. 13.)  Plaintiff's Motion does not dispute that the proper removal procedures were followed.

## III.    THE RELEVANT STATUTORY FRAMEWORK

### A.    The PLSRA Strengthened Protections Against Abuses in Federal Courts But Inadvertently Created a Jurisdictional Loophole

As originally enacted, the Securities Act contained two main provisions in Section 22(a). The first granted state and federal courts concurrent jurisdiction over actions brought under the Securities Act.  15 U.S.C. § 77v(a) (1933).  The second, commonly referred to as the anti-removal provision, prohibited removal of Securities Act claims brought in state courts of "competent jurisdiction."  *Id.*

In 1995, Congress found that abusive class action securities litigation was harming "the entire U.S. economy."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (quoting H.R. Conf. Rep. No. 104-369, 1st Sess., at 31 (1995)); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 (2006).  The abuses included "nuisance filings, targeting of deeppocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent.'"  *Dabit*, 547 U.S. at 81 (citation omitted).  The harms to the national economy included "extortionate settlements" and "deter[rence of ] qualified individuals from serving on boards of directors."  *Id.*  To curb the abuses, Congress passed the PLSRA.  The reforms included fee limitations, selection criteria for lead plaintiffs, heightened pleading requirements for fraud cases, and an automatic stay of discovery pending any motion to dismiss. *See* 15 U.S.C. § 77z-1; *Dabit*, 547 U.S. at 81.

The PSLRA concentrated solely on the procedural and substantive requirements plaintiffs must satisfy to pursue federal securities class actions in *federal court*.  The PSLRA ignored the filing of such actions in state court and left untouched the two provisions in Section 22(a) of the

OPPOSITION TO REMAND 5:17-cv-06779-RS

Securities Act that granted state and federal courts concurrent jurisdiction over Securities Act claims and prohibited the removal of these claims brought in state courts.  This, in turn, created perverse incentives for plaintiffs to pursue federal claims in state court to evade the PSLRA's reach.  *See* H.R. Rep. No. 105-803, at 14-15; *Dabit*, 547 U.S. at 82.  Many plaintiffs took full advantage of this loophole.  As one report submitted to Congress in 1997 described:

> [T]he level of class action securities fraud litigation has declined by about a third in federal courts, but [] there has been an almost equal increase in the level of state court activity, largely as a result of a 'substitution effect' whereby plaintiffs resort to state court to avoid the new, more stringent requirements of federal cases.  There has also been an increase in parallel litigation between state and federal courts in an apparent effort to avoid the federal discovery stay or other provisions of the Act. This increase in state activity has the potential not only to undermine the intent of the Act, but to increase the overall cost of litigation to the extent that the Act encourages the filing of parallel claims.

H.R. Rep. No. 105-803, at 14; H.R. Rep. No. 105-640, at 10 (1998); *see also* S. Rep. No. 105- 182, at 3 (1998).  The SEC called this shift of securities fraud class actions from federal to state court "potentially the most significant development in securities litigation" since the passage of the PSLRA.  H.R. Rep. No. 105-803, at 14 (internal quotations and citation omitted).

**B.    The Uniform Standards Act Closes the Jurisdictional Loophole Created by the PSLRA.**

In 1998, Congress enacted the Uniform Standards Act to close the jurisdictional loophole it created three years earlier.  In the Joint Explanatory Statement of the Committee of Conference set up to reconcile the Senate and House versions of the Uniform Standards Act, the House and Senate managers "determined that, since passage of the [PSLRA], plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the [PSLRA's] procedural or substantive protections against abusive suits are available."  H.R. Rep. No. 105-803, at 14-15.

Contemporaneous critics of the Uniform Standards Act also acknowledged that it would eliminate concurrent state court jurisdiction for covered class actions brought under the Securities

Act.  A spokesman for the National Association of Securities and Commercial Law Attorneys (a plaintiffs' counsel organization) recognized that S. 1260:

> would eliminate even *Federal* cases from being heard in State courts. The Securities Act of 1933 has always provided for *concurrent* jurisdiction of cases filed under the statute and *prohibited* removal of such cases filed in State courts. Under S. 1260, just the opposite would be true. The States would be precluded from hearing actions under the 1933 Act, as they have done for decades.

*Hearing Before the Subcomm. on Sec. of the Comm. on Banking, Hous., & Urban Affairs*, 105th Cong. 64 (Oct. 29, 1997) (prepared statement of Herbert E. Milstein) (emphasis in original).

President Clinton also understood that the Uniform Standards Act granted federal courts exclusive jurisdiction over securities class actions.  When signing it into law, he explained that "there has been considerable concern that the goals of the [PSLRA] have not been realized" because "[s]tate actions are being used to achieve an 'end run' around the [PSLRA's] stay of discovery."  Presidential Statement on Signing the Securities Litigation Uniform Standards Act of 1998, 34 WEEKLY COMP. PRES. DOC. 45, at 2248 (Nov. 3, 1998).  He emphasized that the Uniform Standards Act was important to make federal securities laws more clear "[s]ince the uniform standards provided by this legislation state that ***class actions generally can be brought only in Federal court***, where they will be governed by Federal law . . . ."  *Id.* (emphasis added).  The final bill President Clinton signed into law made "Federal court the exclusive venue for most securities class action lawsuits [and] . . . prevent[ed] plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court." H.R. Rep. No. 105-803, at 13.

The Uniform Standards Act closed the PSLRA's loopholes by making several amendments to the Securities Act.  The "Jurisdictional Provision" in Section 22(a) was amended to divest state courts of jurisdiction over "covered class actions."  As amended, it states:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter [...] and, concurrent with State and Territorial courts, ***except as provided in section [16] of***

7

1

> ***this title with respect to covered class actions***, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.

15 U.S.C. § 77v(a) (amendments in emphasis).

Section 16, as amended by the Uniform Standards Act, defines "covered class action" to encompass all putative class actions as well as non-class actions brought on behalf of more than 50 claimants. *See* 15 U.S.C. § 77p(f)(2). When read collectively, the amendments to Section 22(a)'s Jurisdictional Provision (codified at 15 U.S.C. § 77v(a)) and Section 16(f) (codified at 15 U.S.C. § 77p(f)) (defining "covered class action") render federal courts the exclusive forum for covered class actions. After the Uniform Standards Act, state courts retain concurrent jurisdiction over only Securities Act claims brought in individual actions (*i.e.*, in non-"covered class actions"), which were not found by Congress to be harming the national economy. *See Dabit*, 547 U.S. at 81; *Kircher*, 547 U.S. at 636.

Additionally, the Uniform Standards Act amended the "Anti-Removal Provision" in Section 22(a) of the Securities Act to carve out an exception from the bar that prevents removal of cases "brought in any State court of competent jurisdiction":

> ***Except as provided in section [16(c)] of this title***, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

15 U.S.C. § 77v(a) (amendment in emphasis).

As argued more fully below, because the Uniform Standards Act eliminated state-court jurisdiction over covered class actions alleging Securities Act claims, state courts are no longer courts of "competent jurisdiction" for purposes of the Securities Act's removal bar. *See infra*, section V.C. Thus, notwithstanding that bar, covered class actions alleging Securities Act claims may be removed to federal court under the federal-question removal provision, 28 U.S.C. § 1441(a). *See id*.

**IV.     ISSUE TO BE DECIDED (Civil Local Rule 7-4(a)(3))**

Whether Plaintiff has met his burden of proving an express exception to the removability of this action under 28 U.S.C. Section 1441(a), given that the Securities Act's Anti-Removal Provision applies only to actions brought in a state courts "of competent jurisdiction."

**V.     ARGUMENT**

**A.     This Court Should Stay This Motion Until The Supreme Court Decides *Cyan*.**

The power to stay a case "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  This "general discretionary power" is rooted "in the [Court's] control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).  The Court has "broad discretion" in this area. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

In determining whether to issue a stay, the Ninth Circuit instructs a district court to weigh competing interests:

> Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  The possibility that the outcome of another proceeding—particularly one in an appellate court involving a dispositive issue—will resolve the matter at issue is a powerful justification for granting a stay.  *See, e.g.*, *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) (court may hold one action in abeyance to abide outcome of another which may substantially affect or be dispositive of the issues).  Indeed, at least four district courts have granted stays of motions to remand pending the Supreme Court's decision in *Cyan*.  *See City of Birmingham Retirement & Relief System v. ZTO Express (Cayman), Inc.*, Case No. 2:17-cv-1091-RDP, 2017 WL 3750660, *1 (N.D. Ala. Aug. 28, 2017) ("The Supreme Court's decision on this issue may be dispositive of Plaintiff's Motion to Remand which challenges this court's jurisdiction"); *St. Lucie Cty. Fire Dist. Firefighters' Pension Tr. Fund v. Sw. Energy Co.*, No. 4:16-

9

CV-3569, 2017 WL 3994938, at *1 (S.D. Tex. Sept. 5, 2017); *Hao Wu v. Tokai Pharmaceuticals*, Case No. 1:16-cv-122550-MLW, Dkt. 62 (D. Mass. Sept. 8, 2017); *Rezko v. XBiotech Inc.*, No. A-17-CA-00734-SS, 2017 WL 4544683, at *1 (W.D. Tex. Oct. 6, 2017); *but see Guo v. ZTO Express (Cayman) Inc.*, 2017 WL 6547746 (N.D. Cal. Dec. 22. 2017) (collecting cases denying stay of remand based on *Cyan*).

Courts have diverged over the meaning of the "except clause" in the amended Jurisdictional Provision, which preserves concurrent jurisdiction in state and federal courts "except as provided in section 77p of this title with respect to covered class actions . . .." *See* 15 U.S.C. § 77v(a).  As DLS argues, some courts have broadly interpreted this clause as *except for covered class actions as defined in section 77p(f).*[4] Other courts, as Plaintiff argues, have read this provision more restrictively, interpreting it as except for the certain types of covered class actions precluded by section 77p(b) and removable by section 77p(c).  *See generally* Mitchell A. Lowenthal & Shiwon Choe, *State Courts Lack Jurisdiction to Hear Securities Act Class Actions, But The Frequent Failure To Ask The Right Question Too Often Produces The Wrong Answer*, 17 U. PENN. J. BUS. L. 739, 754, 759-78 (2015) (collecting cases).

---

[4] *See Knox v. Agria Corp.*, 613 F.Supp.2d 419 (S.D.N.Y. 2009); *Hung v. iDreamSky Tech. Ltd.*, Nos. 15-CV-2514 (JPO), 15-CV-2944 (JPO), 15-CV-3484 (JPO), 15-CV-3794 (JPO), 2016 U.S. Dist. LEXIS 8389 (S.D.N.Y. Jan. 25, 2016); *Wunsch v. Am. Realty Capital Props.,* No. JFM14-4007, 2015 U.S. Dist. LEXIS 48759 (D. Md. Apr. 14, 2015); *Lapin v. Facebook, Inc.,* Nos. C-12-3195 MMC, C-12-3196 MMC, C-12-3199 MMC, C-12-3200 MMC, C-12-3201 MMC, C-12-3202 MMC, C-12-3203 MMC, 2012 U.S. Dist. LEXIS 119924 (N.D. Cal. Aug. 23, 2012); *In re Fannie Mae 2008 Sec. Litig.,* No. 08 Civ. 7831 (PAC), 2009 U.S. Dist. LEXIS 109888 (S.D.N.Y. Nov. 24, 2009); *Pinto v. Vonage Holdings Corp.,* No. 07- 0062 (FLW), 2007 WL 1381746 (D.N.J. May 7, 2007); *Rubin v. Pixelplus Co.,* No. 06 Civ. 2964 (ERK), 2007 WL 778485 (E.D.N.Y. Mar. 13, 2007*); Rovner v. Vonage Holdings Corp.,* No. 07-178 (FLW), 2007 WL 446658 (D.N.J. Feb. 5, 2007); In re King Pharms., Inc., 230 F.R.D. 503 (E.D. Tenn. 2004); *Kulinski v. Am. Elec. Power Co.,* No. 02-03-412, slip op. (S.D. Ohio Jan. 7, 2004) (overruling objection to magistrate judge's report in *Kulinski v. Am. Elec. Power Co.,* No. C-2-03-412, 2003 WL 24032299 (S.D. Ohio. Sept. 19, 2003)). Plaintiff cites many of these decisions in its memorandum of points and authorities in support of its Motion.  *See* Mot. at p. 6, n.2 & n.3

10

As a threshold matter, it is nearly a certainty that the Supreme Court will issue a decision directly controlling this motion in the next five months.[5]  *See Cyan, Inc., et al., v. Beaver Cty. Emps. Ret. Fund, et al.*, 137 S.Ct. 2325 (2017), *cert. granted* (No. 15-1439); Petition for Writ of Certiorari, *Cyan*, 2016 WL 3040512 (May 24, 2016) (question presented: "Whether state courts lack subject matter jurisdiction over covered class actions that allege only [] claims [arising under the Securities Act of 1933."]). The instant motion should be stayed until *Cyan* is decided based upon the Ninth Circuit's standard in *Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

First, staying this decision will not result in any damage to any party.  Plaintiff does not seek any injunctive relief or other time-sensitive remedies that would be impaired by a stay.  In addition, staying this motion will not impede the three related class actions that are pending before this Court, and are brought on behalf of substantially the same putative class.  As a result, Plaintiff cannot show that granting a stay will cause him or his putative class to suffer any harm.

Second, denying a stay could impose irreparable hardship on defendants.  If the Court remands this case to state court, defendants could be required to respond to discovery requests and litigate the federal claims under the state court's procedural rules.  But if, as DLS anticipates, the Supreme Court subsequently holds that state courts lack jurisdiction over Securities Act class actions, that decision would apply retroactively to divest the state court of jurisdiction over Plaintiff's case.[6]  In such an event, defendants will have been inequitably forced to expend resources defending federal securities claims in duplicative state court litigation that is not subject to the PSLRA's procedural protections—this is precisely harm that the PSLRA and the Uniform Standards Act seek to avoid.  H.R. Conf. Rep. No. 105-803, at *2 (1998) (enacting Uniform

---

[5] *See* Lee Epstein, William M. Landes and Richard A. Posner J., *The Best for Last: The Timing of U.S. Supreme Court Decisions* 64 Duke L.J. 991, 993 n.6 (2015) (99 percent of Supreme Court decisions are "issued in the same term in which the case is argued.").

[6] "When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule."  *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).

11

Standards Act to prevent state court filings "from being used to frustrate the objectives of the [PSLRA."]).

Third, the "orderly course of justice" supports a stay.  *Hall*, 300 F.2d at 268 (9th Cir. 1962). The point of law directly controlling this Motion will be decided by the Supreme Court almost certainly within five months.[7]  Until then, the parties and the Court would have to expend time and effort grappling with the complicated and divergent approaches to a statute that even Supreme Court justices have characterized as "gibberish."[8]  Staying this motion until *Cyan* is decided will preserve the resources of the Court and the parties until the Supreme Court clarifies the applicable law.  At that time, the "issues, proof and questions of law" will be simplified and there will be no risk of re-litigating identical issues under not-yet-written law.  *Id*.  Therefore all three of the *Hall* factors support staying this Motion.

Moreover, the PSLRA reflects Congress' intent to avoid imposing discovery "costs incurred during the pendency of a motion to dismiss or a motion for summary judgment."   PSLRA Conf. Rep. No. 104-369 at 32 (1995); *see also* 15 U.S.C. § 77z-1(b); *SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of CA*, 189 F.3d 909, 912 (9th Cir. 1999).  Granting a stay here would serve Congress's intent to avoid burdening the parties with discovery before resolving threshold decisions.  In sum, this is the quintessential case where a stay should be granted until the Supreme Court clarifies the threshold jurisdictional issue at bar.

Lastly, the novelty of Plaintiff's federal claims also supports a stay.  Plaintiff's claims are among the first attempting to apply the federal securities laws to cryptocurrency assets.  Therefore state courts do not have an extensive body of federal law to rely upon in evaluating Plaintiff's claims.  This Court should exercise caution by ensuring that state courts have jurisdiction over such claims before allowing non-federal courts to adjudicate novel issues of federal law with which this Court is already familiar.  *See Stichting Pensioenfonds ABP, v. Countrywide Fin. Corp.*, 447 B.R. 302, 312 (C.D. Cal. 2010) (denying motion to remand federal securities claims on equitable

---

[7] *See* n.7 *supra*.

[8] Tr. of Oral Argument at 11, *Cyan*, (2017) (No. 15-1439) (Alito, J.).

1    grounds in part because "the issues in this lawsuit are complex and in some respects novel, but they

2    involve the application of federal law. This Court is intimately familiar with these issues because its

3    docket includes a nearly identical case" such that "this Court is better suited to resolve these issues

4    than the Los Angeles County Superior Court.").

5

6          **B.**       **Plaintiff Bears the Burden of Establishing an Express Exception to Removal Where, As Here, the Court Has Original Jurisdiction.**

7        This Court has original jurisdiction over this action because it arises under the laws of the

8    United States. 28 U.S.C. § 1331. Actions filed in state court over which federal district courts have

9    original jurisdiction may be removed under the general federal removal provision, 28 U.S.C. §

10    1441(a). Once removed, a plaintiff cannot remand an action to state court unless the removal is

11    expressly excluded by an act of Congress. *Id.* "Since 1948, therefore, there has been no question

12    that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to

13    find an express exception." *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003);

14    *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023-24 (9th Cir. 2007).

15        Despite the unequivocal holding of *Breuer*, Plaintiffs argue the burden is on Defendants to

16    overcome a purported presumption against removal, citing *Gaus v. Miles, Inc.,* 980 F.2d 566 (9th

17    Cir. 1992) for the proposition that "[t]he 'strong presumption' against removal means that the

18    defendant always has the burden of establishing that removal is proper." (Mot. at 5.) However,

19    Plaintiffs fail to acknowledge that both the U.S. Supreme Court and the Ninth Circuit have since

20    clarified that "*a plaintiff seeking remand has the burden to prove that an express exception to*

21    *removal exists*." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir.

22    2008) (emphasis added) (citing *Breuer*, 538 U.S. at 698). As Plaintiff implicitly acknowledges

23    (Mot. at 5-7), the critical question here is whether the "Securities Act of 1933 contains an express

24    removal bar that falls within the exception to § 1441(a)[.]" (Mot. at 6.) Accordingly, it is

25    Plaintiff's affirmative burden to establish that the anti-removal provision in the Securities Act on

26    which he relies clearly bars removal of his claims.

27

28

1       In an attempt to shift the burden of proof to DLS, Plaintiff cites a litany of distinguishable

2   authorities that involve the question of whether removal was available in the first instance, and not

3   whether an exception to removal jurisdiction applied. *See Libhart v. Santa Monica Dairy Co.,* 592

4   F.2d 1062, 1065 (9th Cir. 1979) (holding removal in the first instance improper because "five

5   causes of action comprising the original complaint as filed in the state court did not state a federal

6   question"); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (addressing whether All

7   Writs Act vests federal district courts with authority to exercise removal jurisdiction under 28

8   U.S.C. § 1441); *Gaus,* 980 F.2d 566 (no removal jurisdiction in the first instance where amount in

9   controversy insufficient); *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1038

10   (9th Cir. 2014) (no removal jurisdiction in the first instance where district court "erred in finding

11   federal question jurisdiction"); *Madden v. Cowen & Co.*, 576 F.3d 957, 974-75 (9th Cir. 2009)

12   (holding that, if claim is precluded, there is no "federal question on which to moor the district

13   court's jurisdiction," and remanding to district court to determine in the first instance if claim is

14   precluded and jurisdiction exists).[9]  Only where there is a question as to whether or not removal

15   was proper in the first place does the party seeking removal have the burden of establishing that it

16   is appropriate.  That is not the case here.  It is undisputed that Plaintiff has asserted federal claims

17   arising under the Securities Act that trigger federal question subject-matter jurisdiction.  *See* ¶¶ 84-

18   99 (asserting causes of action arising under Sections 5 and 17 of the Securities Act).

19       Because DLS has satisfied the requirements of 28 U.S.C. § 1441(a), the burden shifts to

20   Plaintiff to establish an express exception to removability.  Plaintiff cannot do so.

21

22   [9] In the sole remaining case cited by Plaintiff on the burden of proof, the court did not analyze

23   which party had the burden of proof.  *See Iron Workers Mid-S. Pension Fund v. Terraform Glob., Inc.*, No. 15-CV-6328-BLF, 2016 WL 827374 (N.D. Cal. Mar. 3, 2016).  Importantly though, that

24   court acknowledged that "'a plaintiff seeking remand has the burden to prove that an express exception to removal exists.'"  *Id.* at *1 (quoting *Luther*, 533 F.3d at 1034).  That court then

25   proceeded to consider whether "the Securities Act, as amended by the Securities Litigation Uniform Standards Act of 1998 [], explicitly bars removal of this action."  *Id.*  It, therefore,

26   supports the conclusion that Plaintiff bears the burden of proving that the anti-removal provision in the Securities Act bars removal of this action.

27

28

C.   **Plaintiff Has Not Met His Burden of Proving an Express Exception to the Removability of This Action.**

1.   **Uniform Standards Act Stripped State Courts of Jurisdiction Over Class Actions Asserting Securities Act Claims.**

The plain language of the Uniform Standards Act's amendment to the Jurisdictional Provision of the Securities Act compels the conclusion that state courts no longer have concurrent jurisdiction over class actions alleging Securities Act claims.  The Uniform Standards Act amended the Securities Act to provide concurrent jurisdiction to state and federal courts over Securities Act claims "*except as provided in section [16] of this title with respect to covered class actions*."  15 U.S.C. § 77v(a) (emphasis added).  This language was designed to divest state courts of concurrent jurisdiction over "covered class actions," and in so doing, the amendment incorporates by reference the broad definition of "covered class actions" found in Section 16(f) of the Securities Act, 15 U.S.C. § 77p(f)(2)(A)(i)(I)-(II) ("Section 16(f)").[10]

It is indisputable that the instant action is a putative class action asserting claims under the Securities Act.  As a result, the Superior Court of California lacks jurisdiction to hear this case.  As the U.S. District Court for the Southern District of New York explained in *Knox*, Uniform Standards Act's amendments to the Jurisdictional Provision made it so "federal courts alone have jurisdiction to hear covered class actions raising [Securities] Act claims . . .."  *Knox*, 613 F.Supp.2d at 425.[11]  In the Northern District of California, Judge Chesney, relying on *Knox*, denied a motion

---

[10] By the terms of Section 16, the definition of "covered class action" and other definitions set forth in Section 16 were originally intended to apply only to the various provisions of Section 16.  15 U.S.C. § 77p(f) ("[F]or purposes of *this section*, the following definitions shall apply.") (emphasis added).  As a result, the Uniform Standards Act's amendment to Section 22(a) *had* to employ the words "except as provided in section 16" in order to incorporate by reference into Section 22(a) the definition of "covered class actions," because that definition otherwise only applies to Section 16. *See, e.g., Knox*, 613 F.Supp.2d 419, 423 (S.D.N.Y. 2009) ("Untethered from Section 16, the term 'covered class action' would be susceptible to differing interpretations.")

[11] *See id.* at 424 ("through the definitional lens of Section 16(f), Section 22(a) reinforces the meaning of covered class action by referencing Section 16. The Reference to Section 16 does not add a substantive limitation to the exception to concurrent jurisdiction in Section 22(a); rather, it simply points the reader to the definition of a "covered class action" . . . Construing this reference as a "guide" makes sense because the phrase "covered class action" is a term of art crafted by Congress.")

15

to remand a class action asserting Securities Act claims because the Uniform Standards Act had divested state courts of jurisdiction to hear such claims. *Lapin*, 2012 WL 3647409, at *2 ("[Uniform Standards Act] amended § [22](a) to exempt such covered class actions from § [22](a)'s concurrent jurisdiction provision.") (brackets added). Many other courts have (correctly) reached the same conclusion. *See Wunsch v. Am. Realty Capital Properties*, Civ. No. JFM-14-4007, 2015 WL 2183035, at *1 (D. Md. Apr. 14, 2015); *see also In re Fannie Mae 2008 Sec. Litig.*, No. 08-cv-7831(PAC), 2009 WL 4067266, at *2 (S.D.N.Y. Nov. 24, 2009) (Securities Act "modified by [the Uniform Standards Act ] so that 'covered class actions' are not subject to concurrent state and federal jurisdiction"); *Rovner v. Vonage Holdings Corp.*, Civ. A. No. 07-178 (FLW), 2007 WL 446658, at *4 (D.N.J. Feb. 7, 2007) ("[22(a)] grants exclusive jurisdiction to federal courts over all covered class actions regardless of whether they raise state law claims."); *Rubin v. Pixelplus Co.*, No. 06-CV-2964 (ERK), 2007 WL 778485, at *5 (E.D.N.Y. Mar. 13, 2007) ("Congress eliminated concurrent jurisdiction for covered class actions, which made federal court the sole venue for securities fraud class actions . . . ."); *Pinto v. Vonage Holdings Corp.*, Civ. A. No. 07-0062 (FLW), 2007 WL 1381746, at *1-2 (D.N.J. May 7, 2007) (Section 22(a) "divest[s] state courts of concurrent jurisdiction"); *Cal. Pub. Emps.' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 98 (2d Cir. 2004) ("[the Uniform Standards Act] . . . made federal court the exclusive venue for class actions alleging fraud in the sale of certain securities . . . .").[12]

The mere fact that this case does not involve a "covered security" does not mean – as Plaintiff asserts – that "[t]his case is not a covered class action."[13]  (Mot. at 7.)  The statutory

---

[12] This sensible interpretation is also supported by the Washington Legal Foundation, the U.S. Chamber of Commerce, Business Roundtable, four former Commissioners of the SEC, six prominent professors with securities law expertise at Harvard Law School, Stanford, University of Chicago, Fordham University and Georgetown University, and other respected *amici* in the *Cyan* case.  *See Cyan*, No. 15-1439, Docket.

[13] Likewise, DLS does not contend and never has contended that Tezzies are securities.  DLS's Notice of Removal does not – as Plaintiff suggests (Mot. at 8) – constitute a "concession" that Tezzies are securities.  As reflected by the plain text of the Notice of Removal, DLS properly removed this action because Plaintiff asserts claims "arising under Sections 5 and 17 of the Securities Act of 1933" and "[t]he Baker Complaint sets forth allegations that satisfy th[e]

16

definition of a "covered class action" does not use the term "covered security" or otherwise incorporate that definition by reference.  To the contrary, Section 16(f)(2) broadly defines a "covered class action" as all putative class actions as well as actions on behalf of more than 50 persons:

> (A) The term "covered class action" means—
>
> (i) any single lawsuit in which–
>
> > (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
> >
> > (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
>
> (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—
>
> > (I)  damages are sought of behalf of more than 50 persons; and
> >
> > (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 77p(f)(2).  Just as this definition makes no mention of the term "covered security," it does not limit the definition of "covered class actions" to class actions arising only under state law or only under federal law.  Instead, the definition encompasses class actions that arise under either state law, or federal law, or both.  *See, e.g., Knox*, 613 F.Supp.2d at 424-25 (the definitional provision of "covered class action" in Section 16 does not limit "covered class actions" to those arising under state law).

Because this case meets the statutory definition of a "covered class action", the San Francisco Superior Court lacks subject-matter jurisdiction over this dispute.  Removal was proper.

definition" of a covered class action.  (ECF No. 1 at ¶¶ 7, 10.)  At the appropriate time, DLS will brief the disputed issue as to whether Tezzies constitute securities in greater detail.

17

1
2

**2.      Because State Courts No Longer Have Jurisdiction Over Securities Act Class Actions, the Anti-Removal Provision Does Not Bar Removal of These Cases Under 28 U.S.C. § 1441.**

3

4      Plaintiff argues that the Anti-Removal Provision of the Securities Act prohibits removal in

5   this case and therefore Plaintiff's motion should be granted.  Plaintiff's argument fails because it is

6   inconsistent with the Uniform Standards Act.

7      Post-Uniform Standards Act, the Anti-Removal Provision provides that, with the exception

8   of certain covered class actions, "no case arising under [the Securities Act] *and brought in any*

9   *State court of competent jurisdiction* shall be removed to" federal court.  15 U.S.C. § 77v(a)

10   (emphasis added).  The emphasized language is key.  As set forth above, the Uniform Standards

11   Act's amendment to the Jurisdictional Provision divested state courts of subject matter jurisdiction

12   over these cases and other cases asserting class claims under the Securities Act.  As a result, state

13   courts are no longer "courts of competent jurisdiction" to hear such cases.  *See United States v.*

14   *Morton*, 467 U.S. 822, 828 (1984) (holding "court of 'competent jurisdiction'" is used in many

15   statutes and normally refers to courts with subject matter jurisdiction); *Storey v. Cello Holdings,*

16   *L.L.C.*, 347 F.3d 370, 380 (2d Cir. 2003) ("[A]s a term of art, we give [court of competent

17   jurisdiction] its plain meaning, namely a court that has jurisdiction to hear the claim brought before

18   it.").  Consequently, the Anti-Removal Provision, which applies only to actions brought in courts of

19   competent jurisdiction, is irrelevant to the analysis.  Thus, it cannot act as an exception or bar to the

20   general removal provisions of 28 U.S.C § 1441(a).

21      Plaintiff's argument that "[t]he only exception to the bar on removal is that provided in

22   Section 77p(c) of the Securities Act" (Mot. at 7) fails.  By its express terms, the Anti-Removal

23   Provision only applies to cases that are "brought in any State court of competent jurisdiction[.]"  15

24   U.S.C. § 77v(a).  Where, as here, the state court lacks subject-matter jurisdiction over a covered

25   class action, the Anti-Removal Provision does not apply and therefore there is no need to find an

26   exception to the bar on removal.

27

28

1

### 3. Plaintiffs' Position Cannot Be Reconciled With the Language of the Uniform Standards Act or Supreme Court Precedent.

2

3    While Plaintiff's proposed interpretation of the Jurisdictional Provision is not entirely clear,

4    Plaintiff cites cases that interpret it as divesting state courts of concurrent jurisdiction of only those

5    state claims that are precluded under Section 16(b) of Uniform Standards Act.  (*See* Mot. at 9.)

6    These courts reason that the language added by the Uniform Standards Act to the Jurisdictional

7    Provision – "except as provided in Section 16 with respect to covered class actions" – was not

8    intended to reference the definition of "covered class actions" found in Section 16, but instead was

9    meant to refer just to those covered class actions that are precluded by Section 16(b).  *See, e.g.,*

10   *Rajasekaran v. CytRx Corp.*, No. CV 14-3406-GHK PJWX, 2014 WL 4330787, at *5-6 (C.D. Cal.

11   Aug. 21, 2014).

12       Plaintiff's argument repeats multiple flaws found in the case law that he cites to support

13   remand.  Most fundamentally, "the central error that these courts make is improperly equating the

14   concepts of preclusion and removal with the separate concept of jurisdiction":

15
> [These two concepts] are decidedly distinct. The fact that an action may be
> removable does not mean that a state court lacks jurisdiction over the action.
16
> Likewise, the fact that a claim may be precluded does not mean that a court lacks
> jurisdiction over the claim . . . . [The Uniform Standards Act]'s Jurisdictional
17
> Amendment is not a restatement of Section 16(b)'s preclusion provision or Section
> 16(c)'s removal provision, and the category of class actions the Jurisdictional
18
> Amendment excludes from state court jurisdiction is not the same as the category of
> claims precluded by Section 16(b) or the category of actions removable under
> Section 16(c).
19

20   Lowenthal & Choe at 776.

21       Plaintiff's confusion, and the confusion among courts that import Section 16(b) into the

22   Jurisdictional Provision, appears to arise from Congress's use of "Section 16" generally without

23   reference to a specific subsection.  There is a simple explanation for this: when the bill was first

24   introduced, there was no proposed subsection 16(f).  *See* S. 1260, 105th Cong. § 2(a)(1)(d) (Oct. 7,

25   1997).  Because the definition section comes at the end of Section 16, the subsection letter

26   designation kept changing as amendments were made.  *Compare id. with id.* § 3(a)(1)(f) (as

27   reported May 4, 1998) *with id.* § 3(a)(1)(g) (as passed by Senate, May 13, 1998).  Referring to

28   "covered class actions" in Section 16 generally saved the jurisdictional amendment in Section 22(a)

from having to be revised with each amendment to Section 16, and also if Section 16 is revised in the future.  Importantly, this style of reference is consistent with the Senate's best practices for statutory drafting.  *See* U.S. Senate Office of the Legislative Counsel, Legislative Drafting Manual 9 at 20, 24 (1997) ("To eliminate the need to make conforming amendments that would be required if the paragraph . . . designation of a defined term were changed . . . refer only to the definitions provision itself and not to the particular subdivision that contains the definition.").

Moreover, the authority relied on by Plaintiff is distinguishable because the complaints in those cases only asserted federal Securities Act claims.  Plaintiff's authority uniformly acknowledges that "covered class actions asserting state law claims are removable (so as to allow the federal court to dismiss under the preclusion provision state law class action claims)."  *Clovis*, 185 F.Supp.3d at 1177-78; *see also Rajasekaran*, 2014 WL 4330787, at *6 ("the amendment to the jurisdictional provision makes clear that when a plaintiff asserts claims under the 1933 Act alongside precluded state law claims, the entire action is removable notwithstanding the general bar to removal of 1933 Act claims"); *Iron Workers Mid-S. Pension Fund*, 2016 WL 827374, at *3 ("the most straightforward reading of the provisions is that only covered class actions with state law claims can be removed to federal court, as provided in § 77p(c), and only for the purpose of dismissing the state law claims"); *Cervantes v. Dickerson*, No. 15-CV-3825-PJH, 2015 WL 6163573, at *4 (N.D. Cal. Oct. 21, 2015) (same).  Because Plaintiff asserted both federal and state claims arising out of fraud in connection with the sale or purchase of alleged securities, remand is appropriate even under the cases cited by Plaintiff.

Plaintiff's representation that he "intends to amend the complaint to remove these state law claims upon remand to State Court" does not save his motion.  (Mot. at 8.)  The Ninth Circuit has "long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court."  *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) ("jurisdiction must be analyzed on the basis of the pleading filed at the time of removal without

reference to subsequent amendments.").  This case is distinguishable from *Cad/Cam Publ'g, Inc. v. Archer*, No. 00-2413-IEG CGA, 2001 WL 274555, at *2 (S.D. Cal. Feb. 28, 2001), where the plaintiff dismissed state law claims "four days before Mony Securities filed its notice of removal." Here, Plaintiff chose to plead both state and federal law claims for securities fraud, DLS properly removed based on the pleadings that existed at the time of removal, and Plaintiff has not dismissed any state law claims.  Thus, even if Plaintiff were to voluntarily dismiss state law claims at a later date (which it may not even do),[14] removal was still appropriate even under Plaintiff's own cases. *See id*. ("removal jurisdiction is based on whether a federal question existed at the time that the removal petition was filed").

### D.     Permitting this Case to Proceed in State Court Would Gut Key Provisions of the PSLRA While Risking Inconsistent Rulings and Judgments.

As discussed above, courts across the country have struggled with interpreting Uniform Standards Act and have come to a variety of conclusions and interpretations.  However, only Defendant's interpretation that the Uniform Standards Act divested state courts of jurisdiction over securities class actions based on federal law is consistent with *both* the language of the statute and its purpose.

Recently, the Supreme Court reaffirmed a basic principle of statutory interpretation: if it is possible to interpret language in a statute consistent with the statute's intent, courts must do so. *King*, 135 S. Ct. at 2496.  In *King*, the Supreme Court had to interpret a provision of the Affordable Care Act ("ACA") that provided tax credits for persons enrolling in insurance plans through "an Exchange established by the State under [42 U.S.C. § 18031]." *Id*. at 2488.  The issue before the Court was whether the tax credits were available to people in states that had exchanges established

---

[14] Additionally, Plaintiff's argument that its state law false advertising and unfair competition claims "were intended to provide an alternative basis for liability should the court have decided that the Tezzies were not securities as asserted in Counts I-III" misrepresents the pleadings.  The complaint nowhere alleges that these claims are pleaded "in the alternative" but rather incorporate by reference the allegations of the rest of the complaint.  (¶¶ 100-109.)  In fact, the unfair competition claim specifically alleges that "Defendants' failure to register Tezzies as a security with the SEC prior to offering them to the public in the Tezos ICO violates" Sections 5 and 17 of the Securities Act.  (¶ 107(a)-b)).  Clearly, these state law claims sound in securities fraud.

by the federal government or by a state.  *Id.* at 2485.  Even though ACA defined "State" to mean "each of the 50 States and the District of Columbia," the Court determined that it was necessary to interpret the provision in a manner consistent with ACA's purpose.  Accordingly, the Court determined that the tax credits applied to both exchanges created by states and exchanges created by the federal government stating:

> Congress passed the Affordable Care Act to improve health insurance markets, not to destroy them. *If at all possible*, we *must* interpret the Act in a way that is consistent with the former, and avoids the latter. Section 36B can fairly be read consistent with what we see as Congress's plan, and that is the reading we adopt.

*Id.* at 2496 (emphasis added).  Chief Justice Roberts' words are compelling when applied here:

> Congress passed the [Securities Litigation Uniform Standards Act] to [enact national standards for securities class action lawsuits], not to [allow plaintiffs to avoid the PSLRA by litigating a large swath of federal securities class action lawsuits in state court]. *If at all possible*, we *must* interpret the Act in a way that is consistent with the former, and avoids the latter. Section [22(a)] can fairly be read consistent with what we see as Congress's plan, and that is the reading [courts must] adopt.

As set forth extensively above, the legislative history establishes that the Uniform Standards Act was intended to create national standards for securities class action litigation by precluding state securities class actions and vesting federal courts with exclusive jurisdiction for covered class actions.  *See* H.R. Rep. No. 105-640, at 14 ("[Uniform Standards Act] would amend existing law so that class actions involving most types of securities fraud could not be based on state law and could only be maintained in federal courts.").

    This Court is well positioned to see the problem with Plaintiff's interpretation of Uniform Standards Act. Currently, this action relates to three other securities class actions before this Court. All allege federal claims under the Securities Act and plaintiffs in all purport to represent the same class of investors.  A grant of remand would permit this class action to proceed in state court at the same time that three related and substantially identical class actions proceed before this Court.  The result would be not only an expensive doubling of burdens on the court systems and defendants involved, but also a significant risk that a state court will make rulings on federal claims, applying different procedural standards, that are contrary to rulings made by this Court and that will impact the very same class of plaintiffs and the same defendants with respect to the identical claims.

This risk is particularly acute here, where Plaintiff has artfully avoided pleading claims under the Securities Exchange Act of 1934.  Plaintiff's second and third causes of action are for "Fraud in the Offer or Sale of Securities in Violation of Section 17" of the Securities Act.  (¶¶ 89-99.)  But there is no private right of action for violations of Section 17.  *In re Washington Pub. Power Supply Sys. Sec. Litig*, 823 F.2d 1349, 1358 (9th Cir. 1987) (*en banc*).  Plaintiff may seek to re-plead his fraud claims under Section 10(b) of the Exchange Act.  *See* 15 U.S.C. § 78j(b).  Plaintiff, however, has avoided doing so here because claims arising under the Exchange Act are not subject to the putative removal bar in Section 22(a) and would thus preclude remand.  *See* 15 U.S.C. § 77v(a) (applying prohibition to cases "that arise under this subchapter").  The Court should not allow Plaintiff to plead defective claims in order to make an end-run around Congressional intent and the protections of federal securities laws.

Moreover, remand would permit Plaintiff to improperly employ gamesmanship and to exercise unfair control over the process in coordination with the federally filed case plaintiffs, by, for example, pursuing cases in both forums only until such time as they perceive a preferred forum, effectively wasting judicial (and party) resources for tactical advantage.  Discovery could be sought in the state court forum while the federal plaintiffs would have no right to discovery before the court decided dismissal questions.  The Uniform Standards Act was meant to promote uniformity by having Securities Act class actions decided in federal court.  To force defendants to defend identical claims in both state and federal court does not promote uniform national standards but instead undermines the purpose of the statute, risks inconsistent results, and makes no sense.  *See Knox*, 613 F.Supp.2d at 423.

## VI.    CONCLUSION

For the reasons stated above, Defendant respectfully request that the Court stay determination of the remand motion until the Supreme Court issues its decision in *Cyan*, or alternatively, deny the motion to remand.

Dated:   January 11, 2018

Respectfully Submitted,

BAKER MARQUART LLP


By:  /s/ Brian E. Klein
     Brian E. Klein
     Scott M. Malzahn
     Carter L. George
     BAKER MARQUART LLP

     Patrick Gibbs
     Jeffrey Kaban
     Daniel Sachs
     COOLEY LLP

     Attorneys for Defendant
     DYNAMIC LEDGER SOLUTIONS, INC., a
     Delaware corporation

24