1    James Q. Taylor-Copeland (SBN 284743)
     james@taylorcopelandlaw.com
2    TAYLOR-COPELAND LAW
     501 W. Broadway Suite 800
3    San Diego, CA 92101
     Tel:   619-400-4944
4

5

6    Attorney for Individual and Representative
     Plaintiff Andrew Baker

7

8                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
9

10

11   ANDREW BAKER, individually and on behalf     Case No. 3:17-cv-06850
     of all others similarly situated
12
                                                  **PLAINTIFF'S NOTICE OF MOTION AND**
13                          Plaintiff,            **MOTION TO REMAND;**
                                                  **MEMORNAUDMM OF POINTS AND**
14   v.                                           **AUTHORITIES IN SUPPORT THEREOF**

15   DYNAMIC LEDGER SOLUTIONS, INC., a
     Delaware corporation, THE TEZOS
16   FOUNDATION, a Swiss foundation,
     KATHLEEN BREITMAN, an individual,            Date:   April 26, 2018
17   ARTHUR BREITMAN, an individual, JOHANN       Time:   1:30 p.m.
     GEVERS, an individual, STRANGE BREW          Crtrm:  3
18   STRATEGIES, LLC, a California limited        Judge:  Hon. Richard Seeborg
     liability company, and DOES 1 through 100,
19   inclusive,

20                          Defendants.

21

22

23

24

25

26

27

28
                                        1
     ─────────────────────────────────────────────────────

TO:   ALL PARTIES AND THEIR ATTORNYES OF RECORD

PLEASE TAKE NOTICE that, on April 26, 2018, at 1:30 p.m., before the Honorable Richard Seeborg of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff Andrew Baker ("Plaintiff") moves this court pursuant to 28 U.S.C. 1447(c) for an order to remand this action to the Superior Court of the State of California, County of San Francisco ("State Court").  This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Proposed Order filed herewith, all pleadings and papers filed herein, the arguments made regarding this matter, and any other information properly before the Court.

### ISSUE TO BE DECIDED

Whether, in light of the Supreme Court's unanimous decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund, et al*., No. 15-1439 ("*Cyan*") defendant Dynamic Ledger Solutions, Inc.'s ("DLS") removal of this case to federal court pursuant to 28 U.S.C. §1441(a) was barred by the Securities Act of 1933 ("Securities Act" or "Act"), as amended by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), thus requiring this case to be remanded in accordance with 28 U.S.C. §1447(c) to State Court.

### MEMORNDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

On October 25, 2017, Plaintiff filed this action in State Court under the express jurisdiction of the Securities Act.  Plaintiff asserts claims arising under Sections 12 and 17 of the Securities Act.[1]  Defendant DLS removed the action to this Court under 28 U.S.C. § 1441 and 15 U.S.C. § 77v(a).  *See* Notice of Removal of State Court Action ("Removal") at 2.

On December 28, 2017, Plaintiff filed a motion to remand this action back to State Court on the grounds that the Securities Act explicitly bars removal of actions such as this.  *See* ECF No. 13; 15 U.S.C. § 77v(a).  On January 11, 2018, DLS opposed Plaintiff's motion to remand even though

---

[1] In the alternative, Plaintiff's complaint also asserts state false advertising and unfair competition claims.

courts within the Northern District of California have consistently held that the Securities Act strictly forbids the removal of cases, like this one, alleging claims under the Securities Act. *See* ECF No. 16. Defendants sought to stay the Court's decision on Plaintiff's motion to remand until after the U.S. Supreme Court issued an opinion in *Cyan* or, in the alternative, to deny it outright based on arguments against remand to be considered in *Cyan*. *Id*. at 1.

On February 1, 2018, the Court issued an order denying Plaintiff's motion for remand without prejudice and stayed this case in order to await guidance from *Cyan*. *See* ECF No. 18. The Order allowed Plaintiff to refile a motion for remand within twenty-one days of the Supreme Court issuing its *Cyan* decision. *Id*. at 5.

On March 20, 2018, the Supreme Court issued its order in *Cyan*. *See* Ex. A. First, the Court held that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") "did nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only 1933 Act violations." *Id*. at 24. Second, "[n]either did SLUSA authorize removing such suits from state to federal court." *Id*.

## II.   ARGUMENT

The Securities Act expressly states that "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *See* 15 U.S.C. §77v(a). In *Cyan*, the Supreme Court held that this language prevents class actions alleging claims under the Securities Act, such as this one, from being removed to federal court. *See* Ex. A at 1. Furthermore, SLUSA did not alter the express jurisdiction of state courts over Securities Act claims or the Act's removal bar. *Id*. at 24. In addition, the Court confirmed that the SLUSA state-law class action bar applies "to only 'transactions in covered securities': The statute 'expresses no concern' with 'transactions in uncovered securities' —precisely because they are not traded on national markets." *Id*. at 11.

This case, which asserts Securities Act claims relating to uncovered securities outside of SLUSA's scope, should never have been removed. Courts across the country, including in this

District, have repeatedly found that cases such this properly belong in state court.  *See generally* ECF No.13 (collecting case law). To the extent there was any ambiguity on the issue, the Supreme Court in *Cyan* has unequivocally resolved that ambiguity in favor of Plaintiff's position.  Plaintiff's renewed motion for remand should be granted.

**III.    CONCLUSION**

Plaintiff filed this case nearly five months ago.  He respectfully requests that the Court grant his renewed motion to remand so that he can proceed in the proper forum.

Dated:  March 20, 2018                      **TAYLOR-COPELAND LAW**

By:/James Taylor-Copeland

James Q. Taylor-Copeland

Attorney for Lead Plaintiff Andrew Baker

# Exhibit A

# Exhibit A

Cite as: 583 U. S. ____ (2018)   1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

––––––––––

No. 15–1439

––––––––––

## CYAN, INC., ET AL., PETITIONERS *v.* BEAVER COUNTY EMPLOYEES RETIREMENT FUND, ET AL.

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, FIRST APPELLATE DISTRICT

[March 20, 2018]

JUSTICE KAGAN delivered the opinion of the Court.

This case presents two questions about the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 112 Stat. 3227. First, did SLUSA strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933 (1933 Act), 48 Stat. 74, as amended, 15 U. S. C. §77a *et seq.*? And second, even if not, did SLUSA empower defendants to remove such actions from state to federal court? We answer both questions no.

I

A

In the wake of the 1929 stock market crash, Congress enacted two laws, in successive years, to promote honest practices in the securities markets. The 1933 Act required companies offering securities to the public to make "full and fair disclosure" of relevant information. *Pinter* v. *Dahl*, 486 U. S. 622, 646 (1988). And to aid enforcement of those obligations, the statute created private rights of action. Congress authorized both federal and state courts to exercise jurisdiction over those private suits. See §22(a), 48 Stat. 86 ("The district courts of the United

States . . . shall have jurisdiction[,] concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this title"). More unusually, Congress also barred the removal of such actions from state to federal court. *Id.,* at 87 ("No case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States"). So if a plaintiff chose to bring a 1933 Act suit in state court, the defendant could not change the forum.

Congress's next foray, the Securities Exchange Act of 1934 (1934 Act), operated differently. See 48 Stat. 881, as amended, 15 U. S. C. §78a *et seq.* That statute regulated not the original issuance of securities but instead all their subsequent trading, most commonly on national stock exchanges. See *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 752 (1975). The 1934 Act, this Court held, could also be enforced through private rights of action. See *id.,* at 730, and n. 4. But Congress determined that all those suits should fall within the "exclusive jurisdiction" of the federal courts. §27, 48 Stat. 902–903. So a plaintiff could never go to state court to litigate a 1934 Act claim.

In 1995, the Private Securities Litigation Reform Act (Reform Act), 109 Stat. 737, amended both the 1933 and the 1934 statutes in mostly identical ways. Congress passed the Reform Act principally to stem "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U. S. 71, 81 (2006). Some of the Reform Act's provisions made substantive changes to the 1933 and 1934 laws, and applied even when a 1933 Act suit was brought in state court. For instance, the statute created a "safe harbor" from federal liability for certain "forward-looking statements" made by company officials. 15 U. S. C. §77z–2 (1933 Act); §78u–5 (1934 Act). Other Reform Act provisions modified the procedures used

Opinion of the Court

in litigating securities actions, and applied only when such a suit was brought in federal court. To take one example, the statute required a lead plaintiff in any class action brought under the Federal Rules of Civil Procedure to file a sworn certification stating, among other things, that he had not purchased the relevant security "at the direction of plaintiff's counsel." §77z–1(a)(2)(A)(ii) (1933 Act); §78u–4(a)(2)(A)(ii) (1934 Act).

But the Reform Act fell prey to the law of "unintended consequence[s]." *Dabit*, 547 U. S., at 82. As this Court previously described the problem: "Rather than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law." *Ibid.* That "phenomenon was a novel one"—and an unwelcome one as well. *Ibid.* To prevent plaintiffs from circumventing the Reform Act, Congress again undertook to modify both securities laws.

The result was SLUSA, whose amendments to the 1933 Act are at issue in this case. Those amendments include, as relevant here, two operative provisions, two associated definitions, and two "conforming amendments" to the 1933 law's jurisdictional section. 112 Stat. 3230. (SLUSA's amendments to the 1934 Act include essentially the same operative provisions and definitions. See *Dabit*, 547 U. S., at 82, n. 6. But Congress decided that the 1934 law's exclusive jurisdiction provision needed no conforming amendments.) The added material—now found in §§77p and 77v(a) and set out in full in this opinion's appendix—goes as follows.

First, §77p(b) altogether prohibits certain securities class actions based on state law. That provision—which we sometimes (and somewhat prosaically) refer to as the state-law class-action bar—reads:

"No covered class action based upon the statutory or common law of any State . . . may be maintained in

4       CYAN, INC. *v.* BEAVER COUNTY EMPLOYEES
RETIREMENT FUND
Opinion of the Court

any State or Federal court by any private party
alleging—

"(1) an untrue statement or omission of a material fact
in connection with the purchase or sale of a covered
security; or

"(2) that the defendant used or employed any manipu-
lative or deceptive device or contrivance in connection
with the purchase or sale of a covered security."

According to SLUSA's definitions, the term "covered class
action" means a class action in which "damages are sought
on behalf of more than 50 persons." §77p(f)(2). And the
term "covered security" refers to a security listed on a
national stock exchange. §77p(f)(3) (cross-referencing
§77r(b)). So taken all in all, §77p(b) completely disallows
(in both state and federal courts) sizable class actions that
are founded on state law and allege dishonest practices
respecting a nationally traded security's purchase or sale.

Next, §77p(c) provides for the removal of certain class
actions to federal court, as well as for their subsequent
disposition:

"Any covered class action brought in any State court
involving a covered security, as set forth in subsection
(b) of this section, shall be removable to the Federal
district court for the district in which the action is
pending, and shall be subject to subsection (b) of this
section."

The first chunk of that provision identifies the removable
cases, partly by way of a cross-reference ("as set forth in
subsection (b)") to the just-described class-action bar. The
final clause of the provision ("and shall be subject to sub-
section (b)") indicates what should happen to a barred
class suit *after* it has been removed: The "proper course is
to dismiss" the action. *Kircher* v. *Putnam Funds Trust*,
547 U. S. 633, 644 (2006). As this Court has explained,

Opinion of the Court

§77p(c) "avails a defendant of a federal forum in contemplation not of further litigation over the merits of a claim brought in state court, but of termination of the proceedings altogether." *Id.,* at 645, n. 12. The point of providing that option, everyone here agrees, was to ensure the dismissal of a prohibited state-law class action even when a state court "would not adequately enforce" §77p(b)'s bar. Brief for United States as *Amicus Curiae* 3; see Brief for Petitioners 7; Brief for Respondents 20.

Finally, the 1933 Act's jurisdictional provision, codified at §77v(a), now includes two new phrases framed as exemptions—SLUSA's self-described "conforming amendments." 112 Stat. 3230; see *supra,* at 3. The less significant of the pair, for our purposes, reflects the allowance for removing certain class actions described above. Against the backdrop of the 1933 Act's general removal bar, see *supra,* at 2, that added (italicized) material reads:

> "*Except as provided in section 77p(c) of this title*, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

The more important of the conforming amendments in this case expresses a caveat to the general rule, see *supra,* at 1–2, that state and federal courts have concurrent jurisdiction over all claims to enforce the 1933 Act. As amended (again, with the new material in italics), the relevant sentence now reads:

> "The district courts of the United States . . . shall have jurisdiction[,] concurrent with State and Territorial courts, *except as provided in section 77p of this title with respect to covered class actions*, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter."

Throughout this opinion, we refer to the italicized words

just above as the "except clause." Its meaning is at the heart of the parties' dispute in this Court.

### B

The petitioners in this case are Cyan, a telecommunications company, and its officers and directors (together, Cyan). The respondents are three pension funds and an individual (together, Investors) who purchased shares of Cyan stock in an initial public offering. After the stock declined in value, the Investors brought a damages class action against Cyan in California Superior Court. Their complaint alleges that Cyan's offering documents contained material misstatements, in violation of the 1933 Act. It does not assert any claims based on state law.

Cyan moved to dismiss the Investors' suit for lack of subject matter jurisdiction. It argued that what we have termed SLUSA's "except clause"—*i.e.,* the amendment made to §77v(a)'s concurrent-jurisdiction grant—stripped state courts of power to adjudicate 1933 Act claims in "covered class actions." The Investors did not dispute that their suit qualifies as such an action under SLUSA's definition, see §77p(f)(2). But they maintained that SLUSA left intact state courts' jurisdiction over all suits— including "covered class actions"—alleging only 1933 Act claims. The California Superior Court agreed with the Investors and denied Cyan's motion to dismiss. See App. to Pet. for Cert. 6a. The state appellate courts then denied review of that ruling. See *id.,* at 15a–16a.

We granted Cyan's petition for certiorari, 581 U. S. ___ (2017), to resolve a split among state and federal courts about whether SLUSA deprived state courts of jurisdiction over "covered class actions" asserting only 1933 Act claims.[1]

———————

[1] Compare, *e.g., Luther* v. *Countrywide Financial Corp.,* 195 Cal. App. 4th 789, 797–798, 125 Cal. Rptr. 3d 716, 721 (2011) (holding that state

Opinion of the Court

In opposing Cyan's jurisdictional position here, the Federal Government as *amicus curiae* raised another question: whether SLUSA enabled defendants to remove 1933 Act class actions from state to federal court for adjudication. See Brief for United States as *Amicus Curiae* 23–31. That question is not directly presented because Cyan never attempted to remove the Investors' suit. But the removal issue is related to the parties' jurisdictional arguments, and both Cyan and the Investors addressed it in briefing and argument. See Brief for Petitioners 39–40; Brief for Respondents 31–35; Tr. of Arg. 31, 53–56, 74–76, 80. Accordingly, we consider as well the scope of §77p(c)'s removal authorization.

## II

By its terms, §77v(a)'s "except clause" does nothing to deprive state courts of their jurisdiction to decide class actions brought under the 1933 Act. And Cyan's various appeals to SLUSA's purposes and legislative history fail to overcome the clear statutory language. The statute says what it says—or perhaps better put here, does not say what it does not say. State-court jurisdiction over 1933 Act claims thus continues undisturbed.[2]

——————

courts have jurisdiction over covered class actions alleging only 1933 Act claims), with, *e.g., Knox* v. *Agria Corp.*, 613 F. Supp. 2d 419, 425 (SDNY 2009) (holding that state courts lack jurisdiction over such actions).

[2]This Court has often applied a "presumption in favor of concurrent state court jurisdiction" when interpreting federal statutes. *Mims* v. *Arrow Financial Services, LLC,* 565 U. S. 368, 378 (2012) (quoting *Tafflin* v. *Levitt,* 493 U. S. 455, 458–459 (1990)). Cyan argues that the presumption should not apply here because SLUSA included explicit "language addressing state-court jurisdiction" and "the only question is [its] scope." Reply Brief 22. We need not address that contention because SLUSA's text precludes Cyan's position without aid from any presumption.

### A

SLUSA's text, read most straightforwardly, leaves in place state courts' jurisdiction over 1933 Act claims, including when brought in class actions. Recall that the background rule of §77v(a)—in place since the 1933 Act's passage—gives state courts concurrent jurisdiction over all suits "brought to enforce any liability or duty created by" that statute. See *supra,* at 1–2. The except clause—once again, "except as provided in section 77p of this title with respect to covered class actions"—is drafted as a limitation on that rule: It ensures that in any case in which §77v(a) and §77p come into conflict, §77p will control. The critical question for this case is therefore whether §77p limits state-court jurisdiction over class actions brought under the 1933 Act. It does not. As earlier described, §77p bars certain securities class actions based on *state* law. See §77p(b); *supra,* at 3–4. And as a corollary of that prohibition, it authorizes removal of those suits so that a federal court can dismiss them. See §77p(c); *supra,* at 4–5. But the section says nothing, and so does nothing, to deprive state courts of jurisdiction over class actions based on *federal* law. That means the background rule of §77v(a)—under which a state court may hear the Investors' 1933 Act suit—continues to govern.

Cyan offers an alternative reading, in which one of SLUSA's definitional provisions works to alter state-court jurisdiction. According to Cyan, the except clause's reference to "covered class actions" points the reader to, and only to, §77p(f)(2)'s definition of that term. See Brief for Petitioners 16. And that definition states that a "covered class action" is a suit seeking damages on behalf of more than 50 persons—without mentioning anything about whether the suit is based on state or federal law. Cyan thus concludes that the except clause exempts all sizable class    actions—including    the    Investors'    suit—from

Opinion of the Court

§77v(a)'s conferral of jurisdiction on state courts.

But that view cannot be squared with the except clause's wording for two independent reasons. To start with, the except clause points to "section 77p" as a whole—not to paragraph 77p(f)(2). Cyan wants to cherry pick from the material covered by the statutory cross-reference. But if Congress had intended to refer to the definition in §77p(f)(2) alone, it presumably would have done so—just by adding a letter, a number, and a few parentheticals. As this Court recently explained, "Congress often drafts statutes with hierarchical schemes—section, subsection, paragraph, and on down the line." *NLRB* v. *SW General, Inc.*, 580 U. S. ___, ___ (2017) (slip op., at 9). And "[w]hen Congress want[s] to refer only to a particular subsection or paragraph, it sa[ys] so." *Ibid.* It said no such thing in the except clause.

In any event, the definitional paragraph on which Cyan relies cannot be read to "provide[ ]" an "except[ion]" to the rule of concurrent jurisdiction, in the way SLUSA's except clause requires. A definition does not provide an exception, but instead gives meaning to a term—and Congress well knows the difference between those two functions. Thousands of statutory provisions use the phrase "except as provided in . . ." followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict; we count more than 30 such constructions in the 1933 and 1934 Acts alone.[3]   Not one of those 30-plus provisions cross-

_____

[3]See, *e.g.*, §77k(f)(1) (announcing a general rule of joint and several liability, "[e]xcept as provided in paragraph (2)," which sets out a different liability rule for outside directors); §77p(a) (announcing a general rule that "the rights and remedies provided" under the statute do not displace others, "[e]xcept as provided in subsection (b)," which restricts the right to bring class actions based on state law); §77z–2(c) (announcing a general safe harbor for certain forward-looking statements, "[e]xcept as provided in subsection (b)," which excludes protec-

references a *definition*; nor has Cyan pointed to a single such example from the whole rest of the U. S. Code. And the Congress enacting SLUSA had no reason to attempt that peculiar maneuver for the first time. If Congress had wanted to deprive state courts of jurisdiction over 1933 Act class actions, it had an easy way to do so: just insert into §77p an exclusive federal jurisdiction provision (like the 1934 Act's) for such suits. That rule, when combined with the except clause, would have done the trick because it would have "provided" an "except[ion]" to §77v(a)'s grant of concurrent jurisdiction; by contrast, a mere definition of "covered class action" (as a damages suit on behalf of 50-plus people) does not so provide.

SLUSA's *other* conforming amendment illustrates the two ways in which Cyan's construction of the except clause departs from its language. Recall that §77v(a) includes a general bar on removal. See *supra,* at 2. And recall that SLUSA appended to that prohibition the phrase "[e]xcept as provided in section 77p(c)" to reflect the statute's new permission to remove certain class actions. See *supra,* at 5. In *that* "except as provided" phrase—just four sentences down from the except clause central to this case—Congress pinpointed a subsection of §77p, rather than citing the entire section for only one of its parts. Still more, that cross-referenced subsection contains an operative provision that could limit a rule, rather than a mere definition of a statutory term. In short, Congress wrote the removal bar's except clause in just the way a reader of legislation would expect—and not in the wholly irregular way Cyan proposes for the except clause at issue here. Especially given the two provisions' "interrelationship and close proximity," *Commissioner* v. *Lundy*, 516 U. S. 235, 250 (1996), the one conforming amendment highlights how far Cyan seeks to stretch the text of the other.

—————

tion for a subset of them).

Opinion of the Court

Cyan's interpretation also fits poorly with the remainder of the statutory scheme.  Because Cyan treats the broad definition of "covered class action" as altering §77v(a)'s jurisdictional grant, its construction would prevent state courts from deciding any 1933 Act class suits seeking damages for more than 50 plaintiffs.  That would include suits not involving a "covered security"—*i.e.,* a security traded on a national stock exchange.  §77p(f)(3); Brief for Petitioners 29 (conceding that point).  But this Court has emphasized that SLUSA's operative provisions (including its state-law class-action bar, see §77p(b)) apply to only "transactions in covered securities": The statute "expresses no concern" with "transactions in uncovered securities"—precisely because they are not traded on national markets.  *Chadbourne & Parke LLP* v. *Troice*, 571 U. S. 377, ___ (2014) (slip. op., at 9); see Brief for United States as *Amicus Curiae* 16–17 (SLUSA does not regard suits involving uncovered securities as "a matter of distinct federal concern").  Those securities, the Court explained, are "primarily of state concern," and SLUSA "maintains state legal authority" to address them.  *Chadbourne*, 571 U. S., at ___ (slip op., at 13).  Except that under Cyan's view, SLUSA would not.  Instead, the law would strip state courts of jurisdiction over suits about securities raising no particular national interest.  That result is out of line with SLUSA's overall scope.

And finally, Cyan's take on the except clause reads too much into a mere "conforming amendment."  112 Stat. 3230.  The change Cyan claims that clause made to state-court jurisdiction is the very opposite of a minor tweak.  When Congress passed SLUSA, state courts had for 65 years adjudicated all manner of 1933 Act cases, including class actions.  Indeed, defendants could not even remove those cases to federal court, as schemes of concurrent jurisdiction almost always allow.  See *supra,* at 2.  State courts thus had as much or more power over the 1933

Act's enforcement as over any federal statute's.  To think
Cyan right, we would have to believe that Congress up-
ended that entrenched practice not by any direct means,
but instead by way of a conforming amendment to §77v(a)
(linked, in its view, with only a definition).  But Congress
does not make "radical—but entirely implicit—change[s]"
through "technical and conforming amendments."  *Direc-
tor of Revenue of Mo.* v. *CoBank ACB*, 531 U. S. 316, 324
(2001) (internal quotation marks omitted).  Or to use the
more general (and snappier) formulation of that rule,
relevant to all "ancillary provisions," Congress does not
"hide elephants in mouseholes."  *Whitman* v. *American
Trucking Assns., Inc.*, 531 U. S. 457, 468 (2001).  That is
yet one more reason to reject Cyan's view of SLUSA's text.

### B

Faced with such recalcitrant statutory language, Cyan
stakes much of its case on legislative purpose and history.
See Brief for Petitioners 20–33, 36–37; Reply Brief 7–11,
17–21.  Its claims come in two forms—one relating to the
goals of SLUSA as a whole and the other relating to the
aims of the except clause.  Even assuming clear text can
ever give way to purpose, Cyan would need some monster
arguments on this score to create doubts about SLUSA's
meaning.  The points Cyan raises come nowhere close to
that level.

### 1

According to Cyan's broad purposive argument, Con-
gress could not "make good on the promise of the Reform
Act"—which was its principal intention in enacting
SLUSA—without divesting state courts of jurisdiction over
all sizable 1933 Act class actions.  Brief for Petitioners 20.
Remember that the Reform Act contained a number of
procedural measures (for example, a sworn-certification
requirement for lead plaintiffs, see §77z–1(a)(2)(A)) that

Opinion of the Court

apply only in federal court. See *supra,* at 2–3. Plaintiffs bringing 1933 Act class actions could avoid those provisions simply by filing in state court; after all, those suits were not even removable by defendants. "So," Cyan claims, "Congress enacted SLUSA to finish the job"—by shutting down the state forum and shifting all 1933 Act class actions to the federal one. Brief for Petitioners 21. In support of that view, Cyan cites several statements in SLUSA's legislative reports—in particular, that SLUSA's purpose was "to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court." H. R. Conf. Rep. No. 105–803, p. 13 (1998); see H. R. Rep. No. 105–640, pp. 8–9 (1998); S. Rep. No. 105–182, p. 3 (1998).

But to begin with, Cyan ignores a different way in which SLUSA "serve[d] the [Reform Act's] objectives," Brief for Petitioners 11—which our view of the statute fully effects. Recall that the Reform Act also included substantive sections protecting defendants (like a safe harbor for forward-looking statements) in suits brought under the federal securities laws. See §77z–2; *supra,* at 2. Plaintiffs could—and did—avoid those provisions by bringing their complaints of securities misconduct under state law instead. See *supra,* at 3. Hence emerged SLUSA's bar on state-law class actions (and its removal provision to ensure their dismissal)—which guaranteed that the Reform Act's heightened substantive standards would govern all future securities class litigation. SLUSA itself highlights that aim: Its preamble states that the statute is designed "to limit the conduct of securities class actions under State law, and for other purposes." 112 Stat. 3227. So too, this Court has underscored, over and over, SLUSA's "purpose to preclude certain vexing state-law class actions." *Kircher*, 547 U. S., at 645, n. 12; see *Dabit*, 547 U. S., at 82 (SLUSA stopped plaintiffs from "bringing class actions

under state law"); *Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds*, 568 U. S. 455, 476 (2013) (SLUSA "curtailed plaintiffs' ability to evade the [Reform Act] by bringing class-action suits under state rather than federal law"). That object—which SLUSA's text actually reflects—does not depend on stripping state courts of jurisdiction over 1933 Act class suits, as Cyan proposes. For wherever those suits go forward, the Reform Act's substantive protections necessarily apply.

Still more, SLUSA ensured that federal courts would play the principal role in adjudicating securities class actions by means of its revisions to the *1934* Act. As explained earlier, SLUSA amended that statute in the same main way it did the 1933 Act—by adding a state-law class-action bar. See §78bb(f)(1); *supra,* at 3. But there, the change had a double effect: Because federal courts have exclusive jurisdiction over 1934 Act claims, forcing plaintiffs to bring class actions under the 1934 statute instead of state law also forced them to file in federal court. That meant the bulk of securities class actions would proceed in federal court—because the 1934 Act regulates all trading of securities whereas the 1933 Act addresses only securities offerings. See *Blue Chip Stamps*, 421 U. S., at 752 (characterizing the 1933 Act as "a far narrower statute"). So even without Cyan's contrived reading of the except clause, SLUSA largely accomplished the purpose articulated in its Conference Report: moving securities class actions to federal court.

To be sure, "largely" does not mean "entirely"—but then again, we do not generally expect statutes to fulfill 100% of all of their goals. See, *e.g., Freeman* v. *Quicken Loans, Inc.*, 566 U. S. 624, 637 (2012) ("No legislation pursues its purposes at all costs" (internal quotation marks and alterations omitted)). Under our reading of SLUSA, all covered securities class actions must proceed under federal law; most (*i.e.,* those alleging 1934 Act claims) must proceed in

federal court; some (*i.e.,* those alleging 1933 Act claims) may proceed in state court. We do not know why Congress declined to require as well that 1933 Act class actions be brought in federal court; perhaps it was because of the long and unusually pronounced tradition of according authority to state courts over 1933 Act litigation. See *supra,* at 11–12. But in any event, we will not revise that legislative choice, by reading a conforming amendment and a definition in a most improbable way, in an effort to make the world of securities litigation more consistent or pure. This Court has long rejected the notion that "*whatever* furthers the statute's primary objective must be the law." *Rodriguez* v. *United States*, 480 U. S. 522, 526 (1987) (*per curiam*). Even if Congress could or should have done more, still it "wrote the statute it wrote— meaning, a statute going so far and no further." *Michigan* v. *Bay Mills Indian Community*, 572 U. S. ___, ___ (2014) (slip op., at 11) (internal quotation marks omitted).

2

Yet Cyan has a final argument—that the except clause would serve no purpose at all unless it works as Cyan says. See Brief for Petitioners 32–33; Reply Brief 8–11. Here, Cyan relies on an indubitable puzzle. Section 77v(a), as amended by SLUSA, gives state courts jurisdiction over *1933 Act* suits "except as provided in §77p." But §77p provides a bar on only certain *state-law* suits. So, Cyan contends, unless we take up its invitation to look to §77p(f)(2)'s definition of "covered class action," the except clause excepts "exactly nothing." Reply Brief 8. (To use an example of our own, it would be as if a parent told her child "you may have fruit after dinner, except for lollipops.") What on earth, Cyan asks, would be the point of such a provision?

The Investors answer that question with a theory about why Congress enacted the except clause. In their view,

the clause was meant to deal with "mixed" securities class actions—containing both claims brought under the 1933 Act and claims arising under state law. See Brief for Respondents 12–13. If not for the except clause, the Investors posit, state courts would have been uncertain about how to handle those suits. Section 77p clearly instructs courts not to adjudicate the state-law claims; but (the Investors continue) §77v(a) gives state courts jurisdiction over entire "actions" brought to enforce the 1933 Act, even if they include additional state-law claims. What, then, to do? According to the Investors, the except clause's purpose was to resolve that statutory conflict by making clear that §77p trumps §77v(a)—in other words, that a state court may not entertain state-law claims precluded by §77p(b) even when they are conjoined with 1933 Act claims falling within §77v(a)'s grant of jurisdiction.

Truth be told, we are not sure whether Congress had that issue in mind. On the one hand (and contrary to what the Investors say), we doubt that the except clause was really necessary to address mixed class actions. Even without that clause, a competent state court faced with such a suit would understand that §77p requires dismissal of the state-law claims—and that §77v(a)'s jurisdictional grant over 1933 Act suits is not to the contrary. But on the other hand (and now supporting the Investors' principal point), Congress may have thought that class-action lawyers would still try to circumvent SLUSA by tacking a 1933 Act claim onto a forbidden state-law class action, on the off chance of finding an error-prone judge. (After all, the worst that could happen was that the court would throw out the state-law claims, leaving the plaintiff with a permissible 1933 Act suit.) To prevent such gamesmanship—to make clear beyond peradventure that courts could not entertain the state-law half of mixed class actions—Congress might have added the except clause.

But even if Congress never specifically considered mixed

Opinion of the Court

suits, it could well have added the except clause in a more general excess of caution—to safeguard §77p's class-action bar come whatever might.  This Court has encountered many examples of Congress legislating in that hyper-vigilant way, to "remov[e] any doubt" as to things not particularly doubtful in the first instance.  *Marx* v. *General Revenue Corp.*, 568 U. S. 371, 383–384 (2013) (citing *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 226 (2008); *Fort Stewart Schools* v. *FLRA*, 495 U. S. 641, 646 (1990)). (The idea, to return to our prior example, is to make sure that even if the child thinks orange lollipops count as fruit, she will not act on that view.)  And if ever Congress had reason to legislate in that fashion, it was in SLUSA—whose very impetus lay in the success of class-action attorneys in "bypass[ing] . . . the Reform Act."  *Kircher*, 547 U. S., at 636.  Heedful of that history of machinations, Congress may have determined to eliminate any risk—even if unlikely or at the time unknown—that a pre-existing grant of power to state courts could be used to obstruct SLUSA's new limitation on what they could decide.  And so (this alternative explanation goes) Congress enacted the except clause—which, in insisting that the limitation prevailed, would function as the ultimate (though with any luck, unneeded) fail-safe device.[4]

──────────

[4]In line with this precautionary function, the except clause could do some work to protect §77p's state-law class-action bar in a set of suits beyond mixed cases.  As this Court recently noted, some state-law securities claims "rise[ ] or fall[ ] on the plaintiff's ability to prove the violation" of a federal securities statute.  *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Manning*, 578 U. S. ___, ___ (2016) (slip op., at 7) (addressing the 1934 Act).  In such cases, we held, the state-law claims are "brought to enforce" a liability created by the federal statute, and thus fall within that law's jurisdictional provision.  See *id.,* at ___ (slip op., at 8).  In the absence of the except clause, then, class-action lawyers might well have argued that such state-law claims could be adjudicated under §77v(a) notwithstanding §77p's bar.  Once again, we think most courts would have rejected that claim and decided that §77p

But the most important response to this purposive argument echoes what we have said before about the weaknesses of Cyan's own construction of the except clause. In the end, the uncertainty surrounding Congress's reasons for drafting that clause does not matter. Nor does the possibility that the risk Congress addressed (whether specific or inchoate) did not exist. Because irrespective of those points, we have no sound basis for giving the except clause a broader reading than its language can bear. And that is especially true in light of the dramatic change such an interpretation would work in the 1933 Act's jurisdictional framework. Whatever questions remain as to the except clause's precise purpose—and we do not gainsay there are some—they do not give us permission to devise a statute (and at that, a transformative one) of our own.

## III

Our last task is to address the Federal Government's proposed halfway-house position. The Government rejects Cyan's view that SLUSA stripped state courts of jurisdiction over 1933 Act class actions, for roughly the same reasons we have given. See Brief for United States as *Amicus Curiae* 11–23. But like Cyan, the Government believes that "Congress would not have been content to leave" such suits "stuck in state court," where the Reform Act's procedural protections do not apply. *Id.,* at 15 (internal quotation marks omitted). So the Government offers a reading of SLUSA—in particular, of §77p(c)—that would allow defendants to remove 1933 Act class actions to federal court, as long as they allege the kinds of misconduct listed in §77p(b) (*e.g.,* false statements or deceptive devices in connection with a covered security's pur-

-------------

controls—but the except clause eliminates any chance of a contrary holding.

Opinion of the Court

chase or sale).  See *id.,* at 24–25.

But most naturally read, §77p(c)—SLUSA's exception to the 1933 Act's general bar on removal—refutes, not supports, the Government's view.  Once again, see *supra,* at 4, §77p(c) reads as follows:

> "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) of this section, shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b) of this section."

In other words, the covered class actions described in §77p(b) can be removed to federal court (and, once there, shall be subject to dismissal because precluded, see *supra,* at 5).  And which are the covered class actions described in §77p(b)?  By this point, no one should have to be reminded: They are *state-law* class actions alleging securities misconduct.  See §77p(b) (prohibiting "class action[s] based upon the statutory or common law of any State").  So those state-law suits are removable.  But conversely, *federal-law* suits like this one—alleging only 1933 Act claims—are not "class action[s] . . . as set forth in subsection (b)."  So they remain subject to the 1933 Act's removal ban.

In fact, this Court already held as much, by concluding in *Kircher* that §§77p(b) and 77p(c) apply to the exact same universe of class actions.  See 547 U. S., at 643–644. *Kircher* involved a securities suit that was unaffected by §77p(b)'s class-action bar—there, not because it was based on federal law but because it involved a form of conduct falling outside that subsection.  The Court of Appeals decided that the suit could be removed under §77p(c) even though it was not precluded by §77p(b), thinking (as we later put it) that the removal issue and "the preclusion issue [were] distinct."  *Id.,* at 638.  We flatly rejected that understanding of the relationship between §77p(b) and

§77p(c). The "straightforward reading" of those two provisions, we explained, is that removal is "limited to those [actions] precluded by the terms of subsection (b)." *Id.,* at 643. And if that were not clear enough, we said it again: Removal under §77p(c) is "restricted to precluded actions defined by subsection (b)." *Id.,* at 643–644. And just to pound the point home, we said it yet a third time: "A covered [class] action is removable if it is precluded." *Id.,* at 646. *Kircher* thus forecloses the Government's argument. Section 77p(b) does not preclude federal-law class actions. So under our decision, §77p(c) does not authorize their removal.[5]

The Government responds with a novel way of understanding §77p(c), which it thinks would allow us to disregard *Kircher* when a class action like this one is based on federal law. In the Government's view, first presented at oral argument, see Tr. of Oral Arg. 32–33, the words "as set forth in subsection (b)" do not modify the entire preceding phrase (basically, any large class action involving a covered security). Instead, the Government claims, those words modify only the shorter phrase "involving a covered security." To support that view, the Government invokes the "rule of the last antecedent"—under which "the limiting clause is most naturally applied to the thing that comes immediately before it." *Id.,* at 36. The Government

_____

[5] In light of SLUSA's text and *Kircher*'s holding, it should come as no surprise that all seven Courts of Appeals to have considered the matter have concluded that §77p(c) allows removal of only class actions falling within §77p(b)'s prohibition. See *Campbell* v. *American Int'l Group, Inc.*, 760 F. 3d 62, 64 (CADC 2014); *Hidalgo-Velez* v. *San Juan Asset Management*, 758 F. 3d 98, 103 (CA1 2014); *Appert* v. *Morgan Stanley Dean Witter, Inc.*, 673 F. 3d 609, 615–616 (CA7 2012); *Madden* v. *Cowen & Co.*, 576 F. 3d 957, 965 (CA9 2009); *Sofonia* v. *Principal Life Ins. Co.*, 465 F. 3d 873, 876 (CA8 2006); *Dabit* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F. 3d 25, 33 (CA2 2005), vacated on other grounds, 547 U. S. 71 (2006); *Behlen* v. *Merrill Lynch*, 311 F. 3d 1087, 1092 (CA11 2002).

Opinion of the Court

then presents a theory of how subsection (b) "set[s] forth" the "involv[ement]" of a covered security. "[T]o figure out what that means," the Government contends, "you look at [§77p](b)(1) and (b)(2), which talk about certain types of misconduct"—for example, false statements or deceptive devices in connection with a covered security's sale. *Id.,* at 33–34. As long as conduct of that kind is implicated in a suit, the Government concludes, it can be removed—even if it is based on federal law and thus does not fall within §77p(b) as a whole. That view is consistent with *Kircher*'s result because the action there did not involve the conduct described in §§77p(b)(1) and (2). And as to *Kircher*'s rationale . . . well, we should feel free to ignore it.

But even putting aside respect for precedent, that argument is in many ways flawed. To start with, the Government provides no good reason to think that "as set forth in subsection (b)" modifies only the phrase "involving a covered security." As stated above, the most natural way to view the modifier is as applying to the entire preceding clause—again, "[a]ny covered class action brought in any State court involving a covered security." See *supra,* at 19. That is so because that clause hangs together as a unified whole, referring to a single thing (a type of class action). Consider the following, grammatically identical construction: "The woman dressed to the nines carrying an umbrella, as shown in the picture . . ." Would anyone think that "as shown in the picture" referred to anything less than the well-attired and rain-ready *woman*? No. And so too here, the modifier goes back to the beginning of the preceding clause. The rule of the last antecedent is not to the contrary. We have applied that rule when the alternative reading would "stretch[ ] the modifier too far" by asking it to qualify a remote or otherwise disconnected phrase. *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 342 (2005); *Lockhart* v. *United States*, 577 U. S. ___, ___ (2016) (slip op., at 4) (using the

rule "where it takes more than a little mental energy to process" a statute's component parts, "making it a heavy lift to carry the modifier across them all").[6]  By contrast, we have not applied the rule when the modifier directly follows a concise and "integrated" clause.  *Jama*, 543 U. S., at 344, n. 4.  As it does here.

But let us assume that the rule of the last antecedent governs: The Government then misapplies it by attaching the modifier to something *more* than the last thing before it.  The rule, correctly used, would insist that "as set forth in subsection (b)" modifies only "a covered security"—because that is the closest "noun or noun phrase" that the modifier could reasonably reference.  A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012) (quoting R. Burchfield, Fowler's Modern English Usage (3d ed. 1996)).  But that standard way of applying the rule would not aid the Government's construction, so it goes back yet another word: It attaches "as set forth in subsection (b)" to the longer phrase—and a verb phrase at that—"*involving* a covered security."  Tr. of Oral Arg. 35.  That maneuver has no grammatical basis.  (It is as if, in the example offered above, someone claimed that "as shown in the picture" modified not the woman, nor even the umbrella, but instead the in-between verb phrase "*carrying* an umbrella.")  The Government is choosing where to start in the sentence (that is, which words to

_____

[6]The classic example comes from *Barnhart* v. *Thomas*, 540 U. S. 20 (2003).  The statute at issue provided that a person is disabled if his impairment is so severe that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work *which exists in the national economy*."  *Id.*, at 23 (quoting 42 U. S. C. §423(d)(1)(A)) (emphasis altered).  Invoking the rule of the last antecedent, we concluded that the italicized phrase "which exists in the national economy" modifies only "substantial gainful work," and not the more distant "previous work."  See 540 U. S*., at 26.  Needless to say, that statutory provision is a far cry from the one at issue here.

Opinion of the Court

qualify) based only on what best serves its argument.

But let us even assume that "as set forth in subsection (b)" modifies "involving a covered security": The language would still fail to explain the Government's position. Remember that the Government reads the resulting phrase (again, "involving a covered security, as set forth in subsection (b)") to point only to the forms of wrongful conduct listed in §§77p(b)(1) and (2)—for example, false statements or deceptive devices in securities sales. See *supra,* at 21. The problem is that no one would describe those misdeeds with that phrase. If Congress had meant to refer only to that behavior, rather than to everything in §77p(b), it would have done two things differently. First, Congress would have written "as set forth in paragraphs (b)(1) and (b)(2)" instead of "as set forth in subsection (b)" as a whole. See *supra,* at 9 (explaining that when Congress wants to refer only to a particular subsection or paragraph, it says so). And second, Congress would have written something like "involving allegations of misconduct," rather than "involving a covered security"—because the latter phrase does not even passably describe §§77(b)(1) and (2)'s catalog of vices. We will not read "involving a covered security, as set forth in subsection (b)" to mean "involving allegations of misconduct, as set forth in paragraphs (b)(1) and (b)(2)" when Congress did not enact that formulation. See *Lozano* v. *Montoya Alvarez,* 572 U. S. 1, ___ (2014) (slip op., at 14) ("Given that the drafters did not adopt that alternative, the natural implication is that they did not intend" to do so).

And (finally, we promise) even if we could put out of mind all these difficulties, the Government's position runs aground on §77p(c)'s last clause, which states that removed class actions "shall be subject to subsection (b)." That clause, properly understood, points toward dismissal of a removed action. As we earlier explained, and the Government concedes, Congress enacted §77p(c)'s removal

provision out of "concern[] that state courts would not adequately enforce" §77p(b)'s state-law class-action prohibition. Brief for United States as *Amicus Curiae* 3; see *supra,* at 5. The idea was to allow removal so that a federal court could act as a backstop and order a class action's dismissal—thereby "subject[ing]" it to §77p(b)'s bar. *Kircher* specifically said as much: Section 77p(c) "avails a defendant of a federal forum in contemplation not of further litigation over the merits of a claim brought in state court, but of termination of the proceedings altogether." 547 U. S., at 645, n. 12; see *supra,* at 5. But of course, the Government contemplates "further litigation"—*not* "termination"—of a removed 1933 Act class action. See Brief for United States as *Amicus Curiae* 25. That decoupling of §77p(c)'s linkage between removal and dismissal provides the last reason to reject the Government's argument.

At bottom, the Government makes the same mistake as Cyan: It distorts SLUSA's text because it thinks Congress simply must have wanted 1933 Act class actions to be litigated in federal court. But this Court has no license to "disregard clear language" based on an intuition that "Congress must have intended something broader." *Bay Mills*, 572 U. S., at ___ (slip op., at 11) (internal quotation marks omitted). SLUSA did quite a bit to "make good on the promise of the Reform Act" (as Cyan puts it). Brief for Petitioners 20; see *supra,* at 12–13. If further steps are needed, they are up to Congress.

## IV

SLUSA did nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only 1933 Act violations. Neither did SLUSA authorize removing such suits from state to federal court. We accordingly affirm the judgment below.

*It is so ordered.*

Appendix to opinion of the Court

## APPENDIX

### "77p. Additional remedies; limitation on remedies

.          .          .          .          .

### "(b) Class action limitations

"No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

"(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

"(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

### "(c) Removal of covered class actions

"Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) of this section, shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b) of this section.

.          .          .          .          .

### "(f) Definitions

"For purposes of this section, the following definitions shall apply:

.          .          .          .          .

### "(2) Covered class action
### "(A) In general

"The term "covered class action" means—

"(i) any single lawsuit in which—

"(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized

reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

"(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

"(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

"(I) damages are sought on behalf of more than 50 persons; and

"(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

.          .          .          .          .          .

## "(3) Covered security

"The term "covered security" means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this subchapter pursuant to rules issued by the Commission under section 77d(2) of this title."

## "77v. Jurisdiction of offenses and suits

## "(a) Federal and State courts; venue; service of process; review; removal; costs

"The district courts of the United States and the United States courts of any Territory shall have jurisdiction of

Appendix to opinion of the Court

offenses and violations under this subchapter and under
the rules and regulations promulgated by the Commission
in respect thereto, and, concurrent with State and Territo-
rial courts, except as provided in section 77p of this title
with respect to covered class actions, of all suits in equity
and actions at law brought to enforce any liability or duty
created by this subchapter.  Any such suit or action may
be brought in the district wherein the defendant is found
or is an inhabitant or transacts business, or in the district
where the offer or sale took place, if the defendant partici-
pated therein, and process in such cases may be served in
any other district of which the defendant is an inhabitant
or wherever the defendant may be found.  In any action or
proceeding instituted by the Commission under this sub-
chapter in a United States district court for any judicial
district, a subpoena issued to compel the attendance of a
witness or the production of documents or tangible things
(or both) at a hearing or trial may be served at any place
within the United States.  Rule 45(c)(3)(A)(ii) of the Fed-
eral Rules of Civil Procedure shall not apply to a subpoena
issued under the preceding sentence.  Judgments and
decrees so rendered shall be subject to review as provided
in sections 1254, 1291, 1292, and 1294 of title 28.  Except
as provided in section 77p(c) of this title, no case arising
under this subchapter and brought in any State court of
competent jurisdiction shall be removed to any court of the
United States.  No costs shall be assessed for or against
the Commission in any proceeding under this subchapter
brought by or against it in the Supreme Court or such
other courts."